450 So.2d 972 (1984)
SUCCESSION OF Fausto MAGNANI.
No. 16212-CA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1984.
*973 Cady, Thompson & Duncan by Thomas N. Thompson, Shreveport, for defendants-appellants.
Tucker, Martin, Holder, Jeter & Jackson by Katherine Brash Jeter, Shreveport, for defendant-appellee.
S. Judd Tooke, Shreveport, for plaintiff-appellee.
Before PRICE, SEXTON and NORRIS, JJ.
NORRIS, Judge.
In this succession proceeding, eight particular cash legatees appeal a judgment in a concursus proceeding interpreting a dispute arising from a compromise and settlement agreement entered into between the particular legatees and the residuary legatee over the payment of inheritance taxes in favor of the residuary legatee. We affirm. The issue presented on appeal is whether the parties consented in the compromise agreement that the particular legatees would receive 75% of the total amount of each particular legacy bequeathed by the decedent free and clear of Louisiana inheritance taxes. We conclude that they did not and for that reason affirm the judgment.
This case was tried on the record and a joint written stipulation which we summarize as follows: Fausto Magnani died on February 23, 1980, leaving a last will and testament. In this will, the decedent made certain particular bequests to named individuals and one charitable corporation leaving the balance of his estate in a charitable trust with Louisiana Bank and Trust Company appointed as trustee. The will did not relieve the particular legatees from the payment of inheritance and estate taxes. Because some of the will's provisions were unclear, the executor of the estate filed a Petition for Declaratory Judgment seeking clarification of the will. The question involved was whether the phrase "from fresh, ready cash" immediately preceding the particular bequests established a fund whereby the particular bequests could only be satisfied "from fresh, ready cash" or whether the particular bequests were not subject to the phrase "from fresh, ready cash" and could be satisfied from any of the decedent's property after the liquidation of non-cash assets. Because there was insufficient cash on hand in the succession to satisfy the particular legacies, the particular legatees opposed the first interpretation and supported the alternate interpretation.
After the filing of the petition for declaratory judgment, several conversations and at least one conference were had among the executor, the attorneys for the particular legatees and the attorney for the trustee. Ultimately, a compromise and settlement agreement was reached between the parties in which the particular legatees were to receive 75% of the bequests set forth in the testament. The settlement agreement was prepared by the attorney for the particular legatees. As prepared, the document was to be signed by the attorney on behalf of the legatees that he represented and by the attorney for the particular legatee that the preparer did not represent. The attorneys for the trust and the executor indicated that they preferred to have each legatee sign the agreement individually and the attorney for the particular legatees agreed to this modification. Therefore, the executor had the agreement re-typed for this purpose making no other *974 changes except those necessary in the appearance and signature provisions. The agreement was subsequently executed by all parties without further changes.
After the execution of the agreement, the executor sent the attorney for the particular legatees checks for each particular legatee in the amount of 75% of the bequests less the Louisiana state inheritance taxes due by each legatee on each bequest. The attorney objected to the sums tendered contending that under the language of the compromise and settlement agreement each particular legatee was to receive 75% of the total amount bequeathed free and clear of Louisiana inheritance taxes with the trustee of the residuary legacy to pay all such taxes. It is the position of the attorney for the particular legatees that the word "taxes" used in the agreement included the Louisiana inheritance taxes due by each of the particular legatees on the bequests received as well as any taxes that were general obligations of the succession.
When it became apparent that the disagreement concerning the interpretation of the compromise and settlement agreement could not be resolved, a concursus proceeding was filed by the executor and answered by the particular legatees and the trustee of the residuary legatee.
The trustee filed a Motion for Summary Judgment urging that there were no disputed issues of material fact and that it was entitled as a matter of law to a judgment rejecting the particular legatees' interpretation of the compromise and settlement agreement.
Affidavits were filed in support of the motion which declared that at no time during the discussions leading up to the agreement was the subject of the responsibility for the payment of inheritance taxes on the particular legacies discussed, nor was any demand made on behalf of the particular legatees that they receive their bequests free and clear of the Louisiana inheritance taxes imposed on them by law.
Counteraffidavits filed did not contest the truth of the supporting affidavits but asserted that the matter of inheritance taxes had been discussed between the attorneys for the particular legatees and their clients. However, they acknowledged that the matter of inheritance taxes was never discussed with the executor or the attorney for the trustee. Both asserted that a demand was made on behalf of the particular legatees for 75% of the total amount of each cash legacy.
The motion for summary judgment was denied. Thereafter, the parties entered into the above summarized stipulation in which it was further stipulated that the matter be tried upon all of the pleadings and filings in this cause, as well as the stipulated facts and briefs. In this posture, the case was submitted to the trial court.
After considering the issues involved, the trial court was of the opinion that the general rule of law should be followed in this case thereby making each particular legatee responsible for his own inheritance taxes upon a finding that the agreement did not clearly indicate to the contrary. Accordingly, Louisiana Bank and Trust Company, as trustee, was decreed to be the owner of the sum on deposit in the registry of the court.
In summary, the position of the particular legatees is that under the compromise agreement each particular legatee should receive a full 75% of the cash legacy made to each of them under the terms of the will, that all debts, claims, taxes, funeral expenses, administrative costs, and fees due should be paid by the executor, and the residuary legatee should receive the remainder of the estate because the payment of all taxes, including inheritance taxes, by the residuary legatee is clearly and unambiguously within the scope of the compromise agreement which was to resolve the amount the cash legatees would receive in satisfaction of the legacies.
Conversely, Louisiana Bank and Trust Company argues that because the will contains no directive to relieve the particular legatees from the burden of inheritance *975 tax, their liability was so clear and undisputed that this question was not at issue in the proceeding for declaratory judgment which resulted in the compromise and settlement. It is contended that this issue was never raised in any of the discussions leading up to the compromise and that any ambiguity in that regard contained within the agreement should be construed against the particular legatees.
Accordingly, we must examine the compromise agreement in light of the applicable legal principles to answer the ultimate question presented for our resolution.
Transaction or compromise is defined by La.C.C. Art. 3071:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
A transaction or compromise has also been described as "an onerous, synallagmatic and consensual contract". Under the general rules pertaining to contracts, it is the law between the parties [La.C.C. Art. 1901] and must be interpreted according to the clear and explicit terms found in the agreement [La.C.C. Art. 1945]. Ritchey v. Azar, 383 So.2d 360 (La.1980).
Of further import in the interpretation of the operative language of a compromise is La.C.C. Art. 3073:
Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises.
Accordingly, in order to have a valid compromise, there must be a meeting of the minds between the parties as to exactly what they intended when the compromise was reached. Munna v. Mangano, 404 So.2d 1008 (La.App. 4th Cir.1981). A compromise extends only to the differences which the parties intended to include therein. Troy v. Bretz, 399 So.2d 667 (La. App. 1st Cir.1981). Thus, transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties. Halford v. Dugas, 422 So.2d 693 (La.App. 3d Cir.1982). The meaning and effect of a compromise agreement is determinable on the principle that the contract must be construed as a whole and in the light of attending events and circumstances. Succession of Teddlie, 385 So.2d 902 (La.App. 2d Cir.1980). With these principles in mind, any resolution of the issue herein must be based upon our determination of what the parties could reasonably have intended by the language employed in the compromise agreement in light of the surrounding circumstances.
The dispute bringing on the initial judicial proceeding between the parties centered around the interpretation of certain specific language in the will of the decedent:
Subject to the charitable trust created herein below and to the payment of claims, funeral, burial and administration expenses and estate taxes, I make the following bequests:
From fresh, ready cash:
I hereby bequeath to DONNIE DOWELL, my true and loyal housekeeper for these many years, the sum of $20,000.00.

*976 To my dear friend HENRY C. JOSTOK of Chicago, Illinois, the sum of $10,000.00.
To my friend and barber DANNIE L. GADDY, the sum of $5,000.00.
To my dear friend, BILLY SHIPP of Haughton the sum of $5,000.00.
To JOHNNY RODRIGUES, JR. of Jefferson, Texas, the sum of $5,000.00.
To ANNE ADAMS of Shreveport, the sum of $5,000.00.
To MARGARET WARD of Haughton, the sum of $5,000.00.
To JOSEPHINE CARMODY of Shreveport, the sum of $5,000.00.
To ANIMAL WELFARE, INC., a non-profit, charitable organization located in Shreveport, I leave the sum of $2,000.00. * * * [Emphasis added.]
While the will made total cash bequests in the amount of $62,000, the executor claimed that the total "fresh, ready cash" amounted to $38,511.93 subject to an indebtedness of the succession in the amount of $17,596.08. However, the estate did possess other assets totalling approximately $510,000. Consequently, the executor filed a petition for declaratory judgment seeking a construction of the term "fresh, ready cash" to mean that all cash legacies should be made only from the cash on hand at the time of the decedent's death and that any liquidation of non-liquid assets undertaken by the executor because of exigent circumstances should not be construed to increase the amount of available fresh, ready cash.
The trustee for the residuary legatee filed a general denial answer to this petition. However, the particular legatees in their answer alleged that they were entitled to be paid out of the effects of the succession after the legacies of certain objects were taken out and that the cash legacies were entitled to be discharged in preference to the residual legacy.
Thereafter, the executor petitioned the court for authority to compromise the action for declaratory judgment. The compromise agreement contains the following pertinent language:
* * * in consideration of the premises and the benefits received and to be received, and mutual obligations incurred hereunder by them and each of them, do now agree, each with the other and with each other, that all of their aforesaid differences and controversies and the aforesaid lawsuit shall be settled, adjusted and compromised as among the parties hereto on the terms and conditions hereinafter set forth, and in order to accomplish such purposes, they and each of them do now expressly agree as follows:
Each cash legatee, under the Last Will and Testament of Maestro Fausto Magnani dated February 17, 1980 shall receive seventy-five percent (75%) of the total amount of each cash legacy made in said Will.
Louisiana Bank and Trust Company of Shreveport, Louisiana shall receive as residuary legacy the entire remainder of the estate of Maestro Fausto Magnani after the payment of debts, claims, taxes, funeral expenses, administrative costs, fees and seventy-five percent of the cash legacies.
We believe that the intent of the parties, as evidenced by the language of the compromise agreement and the attendant circumstances surrounding it, was solely to clear up a dispute over what constituted fresh, ready cash and thus, from what assets of the succession the particular cash legatees were to be paid. This is evidenced by the language of the compromise itself and the petition for authority to compromise the action. This conclusion is further bolstered by the stipulation of facts in which it is stipulated that the question of who was to pay the inheritance taxes on the particular legacies was never discussed among the attorneys in their negotiations. While counsel for the particular legatees represents that the payment of taxes was discussed between counsel and the particular legatees, he does not dispute that this subject was never mentioned to the executor or the attorney for the trustee. Accordingly, we do not find that the language used indicates a clear intention of the parties *977 to compromise any claim regarding the payment of inheritance taxes on the individual cash legacies. In fact, it is clear from the evidence in the record that the differences that existed between the parties when the compromise agreement was executed did not extend to the payment of inheritance taxes.
This conclusion is likewise supported by the fact that the parties failed to use language in the compromise agreement which would clearly indicate that the estate or the trustee would be liable for the payment of those taxes. If the parties' intent in compromising this matter had been to include the question of the payment of inheritance taxes, then that result could have been assured by using language clearly expressing that intention. See Ritchey v. Azar, supra. It is significant that the compromise agreement was drafted by the attorney for the particular legatees; therefore, it is self evident that if he had intended that the estate or the trustee be liable for the payment of inheritance taxes rather than the particular legatees, he was in the best position to evidence that intent by the use of clear, unequivocal language to accomplish that purpose in his draft agreement. Furthermore, because the attorney for the particular legatees was the drafter of the operative language in this instrument, any ambiguity contained therein must be construed against the particular legatees. La.C.C. Art. 1958; Kuhn v. Plauche Real Estate Co., 185 So.2d 210 (La.1966); Carpenter v. Leon E. Werntz & Assoc., Inc., 345 So.2d 1018 (La.App. 2d Cir.1977). Because "after the payment of debts, claims, taxes, funeral expenses, administrative costs, fees ..." as used in the compromise agreement is at best ambiguous, we must conclude that the agreement made no provision for the payment of 75% of the total amount of each particular legacy in the will free and clear of Louisiana inheritance taxes.
For the foregoing reasons, we find the judgment of the trial court to be correct, and it is affirmed at the cost of appellants.
JUDGMENT AFFIRMED.