645 So.2d 1166 (1994)
Donald MILEY, et al.
v.
CONTINENTAL INSURANCE COMPANY, et al.
No. 93 CA 1652.
Court of Appeal of Louisiana, First Circuit.
September 9, 1994.
*1167 John W. Perry, Jr., Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, appellees, Hartford Ins. and Indemnity Co.
Boris F. Navratil, Navratil, Hardy & Bourgeois, Baton Rouge, appellants, Glens Falls Ins. Co. and Boston Old Colony Ins. Co.
Before GONZALES, PITCHER and PARRO, JJ.
PARRO, Judge.
This case involves a coverage dispute between insurers over the interpretation of a "per occurrence" clause in an insurance policy. The trial court determined coverage should be based on a finding of two occurrences instead of only one occurrence. We affirm.

FACTS AND PROCEDURAL HISTORY
On October 5, 1989, Bennett & Peters, Inc. ("Bennett & Peters"), a firm of forestry consultants and managers, conducted what is known in forestry as a "controlled burn" on a tract of land adjacent to Interstate Highway 12 ("I-12") in Tangipahoa Parish, Louisiana. The firm had contracted with the owners of the land, Marietta Reimers Schneider, Lorna A. Reimers, and Jay Thomas Lewis, as trustees under the will of Frederick J. Reimers ("Trustees") for the management of the forestry operations on their property. The employees of Bennett & Peters set the fires between 11:00 a.m. and 1:00 p.m. on October 5, 1989, and left the property at approximately 3:30 p.m. By the time the employees left, the fire had swept over the entire tract of land and had burned itself out, except in a small area where it was still burning.
In the early morning hours of October 6, 1989, there were two sets of collisions which took place on I-12 adjacent to the land burned by Bennett & Peters. The first set of collisions involved an 18-wheeler, an automobile, and a bus, in which three people were killed and six injured. Approximately 15 minutes later and two-tenths of a mile to the east of the fatal collision, there was a second collision between a van and another 18-wheeler. It was stipulated that any smoke which contributed to the poor visibility on I-12 at the times of the two collisions, and which came from the Trustees' land, emanated from the fires set by Bennett & Peters.
Nine suits were filed as a result of these collisions, and included as defendants were Bennett & Peters and their insurers, Glens Falls Insurance Company ("Glens Falls") and Boston Old Colony Insurance Company ("Boston"). Also named as defendants were the Trustees and their insurer, Hartford Insurance and Indemnity Company ("Hartford").
Ultimately, all of the damage suits were settled for an aggregate amount of $4,300,000. Of this amount, the insurers of Bennett & Peters paid $4,000,000, which they maintain was the total coverage available under their policies per occurrence. The remaining $300,000 was funded provisionally, as follows: half by Glens Falls and Boston; half by Hartford. By stipulation of the insurers, both sides agreed to submit the coverage question to the trial court for adjudication with the understanding that the ultimate loser would refund $150,000 to the ultimate winner.
The trial court decided the "per occurrence" issue in favor of Hartford, holding that the two sets of collisions were two occurrences, and that the settlement amount did not exceed the limits of the Glens Falls and Boston policies. Therefore, it was unnecessary for the court to address Hartford's alternative argument concerning completed operations hazard limits. Judgment was rendered in Hartford's favor for $150,000, and the other insurers appealed.

DISCUSSION
The Glens Falls policy provided primary coverage with a $1,000,000 per occurrence *1168 limit of liability and two sets of aggregate limits of $2,000,000 each, one for claims under the general liability section of the policy and one for claims under the completed operations portion of the policy. The Boston policy provided excess coverage in the amount of $3,000,000 per occurrence, with a $3,000,000 aggregate limit.
Glens Falls and Boston maintain that the only "occurrence" involved was the alleged negligence of Bennett & Peters in permitting smoke from its operations to obscure the highway. Hartford takes the position that because the second collision occurred at a different time and place from the first, there were two occurrences, and therefore another per occurrence limit of the Glens Falls basic policy was applicable to the second collision.
In essence, Hartford argues that the number of collisions resulting from the insured's fault is determinative of the number of occurrences, whereas Glens Falls and Boston argue that the underlying fault of the insured is the determinative factor in interpreting the per occurrence clause of the policy. Counsel for Glens Falls and Boston reasons that the initial fault or wrongful act of the insured, if it causes damage, is the only "occurrence" that will trigger coverage.
A resolution of the issue must begin with an examination of the terms of the insurance policy in question. In this regard, the relevant language of the insuring agreement in the Glens Falls policy states that the insurer will pay on behalf of the insured the sums which the insured becomes legally obligated to pay for damages on account of bodily injury or property damage "caused by an `occurrence'." Thus, the policy language provides coverage only for damages caused by an "occurrence" instead of caused by "fault" even though the same fault could cause more than one occurrence. Therefore, it becomes especially important to focus on the determination of whether there were one or more occurrences.
In this context, a review of the policy shows that "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." This language, therefore, equates "occurrence" with "accident." It further qualifies the term "accident" as "including continuous or repeated exposure to substantially the same general harmful conditions."
In its ordinary or popular sense, the word "accident" means "a fortuitous circumstance, event, or happening." Knight v. L.H. Bossier, Inc., 118 So.2d 700, 703 (La.App. 1st Cir.1960). Under this commonly accepted meaning of accident, it is clear that an "occurrence" could result from a single identifiable event, such as a vehicular collision. See Whetstone v. Dixon, 616 So.2d 764 (La.App. 1st Cir.), writs denied, 623 So.2d 1333 (La. 1993). However, under the expanded definition in the policy, it could also result from "continuous or repeated exposure" to a condition that causes damage.
In the first instance involving a single identifiable event, such as a collision, the finding of an occurrence would usually be obvious. In the second instance involving a continuous or repeated exposure to substantially the same general harmful conditions, such as toxic fumes or pile-driving activities, the finding of an occurrence would not be so obvious in many cases since the mere existence of the condition may not result immediately in direct damage. However, any resulting damage occasioned by the continuous or repeated exposure to the condition would substantiate the finding of an occurrence.
Rationally, we can only view the two sets of collisions in which the initial plaintiffs received injuries as two accidents, separated in time and space on the highway. Each set of collisions was a single identifiable event. Thus, each set of collisions was an "occurrence" within the terms of the Glens Falls policy.
In the instant case, the trial court rendered judgment in favor of Hartford, but seemingly on the ground that the two sets of collisions were the result of continuous or repeated exposure to the smoke, and that according to Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (La. 1973), each set of collisions must be regarded as an occurrence. We agree with the trial court's result, but in light of the facts of this *1169 case, we do not agree that Lombard is applicable.
The Lombard court held that a contractor's pile-driving activities continuing for over a year and causing damage to numerous landowners constituted numerous occurrences. The pertinent policy provision in that case provided: "Occurrence means either an accident or a continuous or repeated exposure to conditions which results during the policy period in injury to person or real or tangible property which is accidentally caused. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence." Id. at 915. None of the plaintiffs could point to a single "accident," but instead each claimed damage from "continuous or repeated exposure" to the pile-driving activities as a cause of his or her damage. The court explained its analysis as follows:
As a rational matter, however, it can hardly be said that this construction project lasting more than one year is a single "occurrence" within the contemplation of the quoted clause. Rather, we think it is more logical to view this project as a series of "occurrences" resulting in damages during the course of this prolonged undertaking.... As to each of these plaintiffs, the cumulated activities causing damage should be considered as one occurrence, though the circumstances causing damage consist of a continuous or repeated exposure to conditions resulting in damage arising out of such exposure. Thus, when the separate property of each plaintiff was damaged by a series of events, one occurrence was involved insofar as each property owner was concerned. Notwithstanding, therefore, that the same causes may have operated upon several properties at the same time resulting in varying degrees of damage, it cannot be regarded as one occurrence, but the damage to each plaintiff is a separate occurrence.
284 So.2d at 915-916.
Thus, in Lombard, the finding of an occurrence was based on continuous or repeated exposure to the condition (pile-driving activities) and not on an accident in the ordinary sense of the word.
In the case sub judice, the trial court characterized the factual situation as involving continuous or repeated exposure to the smoke that hampered visibility on the interstate highway. However, the smoke itself, unlike the pile-driving in Lombard, did not damage anything; the smoke was merely a contributing cause of the two sets of collisions. Thus, the continuous or repeated exposure to the smoke (condition) did not constitute an occurrence under the policy language or under the rationale of Lombard. Because this case involves the traditional type of accident, specifically vehicular collisions, the trial court's characterization of an occurrence involving continuous or repeated exposure to substantially the same general harmful conditions was inappropriate.
The fact that the fault of the insured was a contributing cause of both occurrences is immaterial. See Lombard, 284 So.2d at 916. The wrongful act of the insured would have been an occurrence under the terms of the policy if it had immediately caused damage, such as a situation in which several individuals are overcome by smoke from one fire. Instead, the wrongful act of the insured is not determinative here because the smoke was not the direct cause of the damages, but was a contributing cause of the two sets of collisions, which did constitute two accidents or occurrences.

DECREE
For the foregoing reasons, the finding of two occurrences by the trial court and its judgment in favor of Hartford are affirmed. Costs of this appeal are assessed against the appellants.
AFFIRMED.