**EXXON CORPORATION,**

v.

**ST. PAUL FIRE & MARINE INSURANCE.**

Civ. A. No. 94–2111.

United States District Court, E.D. Louisiana.

June 23, 1995.

St. Paul Fire & Marine Insurance and DE-NIES the motion of Exxon Corporation.

### Background

Exxon Corporation (hereinafter "Exxon") filed suit seeking declaratory judgment that a "Settlement Agreement" allegedly entered into with St. Paul Fire & Marine Insurance Company (hereinafter "St. Paul") does not contain a limit of $500,000 on sums owed by St. Paul. (R.Doc. 1.)· Exxon further seeks declaratory judgment that St. Paul has breached the Settlement Agreement. *Id.*

St. Paul answered, denying the complaint. (R.Doc. 3.) St. Paul also alleged affirmative defenses, contending that there was no coverage afforded to Exxon under the underlying policy and that, if the settlement agreement is valid, the amount St. Paul has to pay is limited to the $500,000 limit of the underlying policy. *Id.* The last of St. Paul's affirmative defenses was that, if the settlement agreement does provide for unlimited funds from St. Paul, there was no meeting of the minds and, hence, no agreement. *Id.*

It is uncontested that Exxon and St. Paul entered into a "Settlement Agreement" in late 1991 as to whether St. Paul owed Exxon coverage as an additional insured under a policy issued by St. Paul.[1] St. Paul initially had issued the insurance to a third party for coverage on a barge. Pursuant to Exxon's bareboat charter of that barge, Exxon claimed to be an insured under St. Paul's policy.[2]

The Settlement Agreement initially states the following in a series of recitals that begin with the word "Whereas":

1) that three men were injured on April 29 and/or 30, 1989, while unloading the barge;

2) that two other men who were members of a crew of a vessel towing the barge were injured on April 26 and/or 27, 1991;[3]

3) that at the time of the alleged accidents, the barge was owned by McDonough Marine

Louise Vanmeter White, Lourdes Estevez Martinez, Exxon Co., U.S.A. Litigation Div., New Orleans, LA, for plaintiff.

John Emerson Galloway, Galloway, Johnson, Tompkins & Burr, P.L.C., New Orleans, LA, Peter Henry Wickersham, Nesser, King & LeBlanc, New Orleans, LA, for St. Paul Fire and Marine Ins. Co.

Maria Nan Alessandra, Phelps Dunbar, New Orleans, LA, for Phelps Dunbar LLP.

### ORDER AND REASONS

JONES, District Judge.

Pending before the Court are cross-motions for reconsideration of summary judgment by the parties in this declaratory judgment action. Having reviewed the memoranda of the parties, the record and the applicable law, the Court GRANTS the motion of

---

1. A copy of the "Settlement Agreement" is attached to Exxon's motion for summary judgment as Exh. A. (R.Doc. 29.)

2. A copy of the policy is attached to a stipulation filed into the record by the parties. (R.Doc. 54.)

3. The Court notes that the "Settlement Agreement" is inconsistent as to the dates of accident of the last two men because, later in the agreement at p. 3, the agreement states that these two men filed suit in 1990. Thus, they would have filed suit before their accident occurred.

Service, a division of Marmac Corporation, and was under bareboat charter to Exxon;

4) that allegedly, by virtue of the bareboat charter, Exxon was an insured under a policy of insurance issued by St. Paul to McDonough Marine Service;

5) that allegedly, by virtue of the bareboat charter, McDonough Marine had been relieved of the custody and control of the barge and that Exxon had agreed to indemnify and hold harmless McDonough Marine from claims of bodily injury;

6) that all five men filed lawsuits against Exxon;

7) that Exxon filed a third-party complaint against St. Paul in one of the lawsuits, seeking indemnity as an insured under the policy at issue;

8) that St. Paul denied coverage under the policy at issue;

9) that the third-party complaint was set for trial;

10) that Exxon and St. Paul "desire[d] to settle their differences" without necessity of a trial of the third-party complaint or any other litigation in regard to the other lawsuits;

11) that Exxon and St. Paul released each party from all claims arising from the five lawsuits, except as provided in the rest of the agreement.

The remainder of the "Settlement Agreement" provided that St. Paul agreed to pay 60 percent of the amount Exxon and St. Paul agreed that "Exxon should contribute to any settlement." St. Paul also would pay 60 percent of any judgment amount Exxon would be required to pay. Further, St. Paul would reimburse Exxon $50.00 an hour expended by Exxon's in-house counsel in defense of the lawsuits. St. Paul also would reimburse Exxon for fifty percent of litigation costs (exclusive of attorney's fees and any judgment or settlement funds expended by Exxon).

Exxon and St. Paul further agreed to make reasonable efforts "to reach a mutual agreement concerning the settlement of the claims asserted by the plaintiffs" in four of the lawsuits. If not, the parties agreed on a formula for payment of any awards to four plaintiffs after trials in excess of what either Exxon or St. Paul deemed to be an acceptable settlement offer.

The only references to the insurance policy at issue are in the recitals at the beginning of the "Settlement Agreement." No reference exists in the body of the agreement.

Subsequently, St. Paul has refused to pay more than $500,000 under the settlement agreement, contending that the "Settlement Agreement" incorporates the policy's limit.[4] Exxon disagreed and filed this lawsuit.

Previously, both parties had moved for summary judgment on the basis that the plain language of the "Settlement Agreement" militated in favor of their respective positions. St. Paul also argued, alternatively, that the agreement was null and void because there had been no meeting of the minds. Following oral argument, the Court denied both motions. (R.Doc. 18.)

The parties have again filed cross-motions for summary judgment, arguing this time that not only is the settlement statement unambiguous (in support of their respective positions, of course) but also that parol evidence in the form of deposition testimony of the drafters of the "Settlement Agreement" support their respective contentions.

Law and Application

A. Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving part is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

B. Louisiana Law

■ The Court finds and the parties agree that Louisiana law is applicable to interpreta-

---

4. A copy of the Certificate of Insurance for the policy is attached as Exh. 2 to the deposition of William V. Courtney, attached as Exh. A to St.

Paul's instant motion for summary judgment. (R.Doc. 32.)

tion of this "Settlement Agreement." *See Davis v. Huskipower Outdoor Equipment Corporation*, 936 F.2d 193, 196 (5th Cir.1991) (enforceability of settlement agreements is governed by the law of the forum state).

Article 3071 of the Louisiana Civil Code defines compromise:

A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

The Louisiana Supreme Court has described the elements of compromise as a "mutual intention of putting an end to litigation and . . . reciprocal concessions of the parties in adjustment of their differences." *Rivett v. State Farm Fire and Casualty Company*, 508 So.2d 1356, 1359 (La.1987). Put another way, a valid compromise agreement requires a writing, a mutual consent to adjust differences, the hope of gain from the agreement, consideration and performance by the parties in the agreed upon manner. *Parich v. State Farm Mutual Automobile Insurance Company*, 919 F.2d 906, 914 (5th Cir.1990).

■ When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation of the parties' intent in a contract may be made. LSA–C.C. Art. 2046.[5] A contract is not rendered ambiguous simply because the agreement does not expressly impose the obligation in question. *American Totalisator Company, Inc. v. Fair Grounds Corp.*, 3 F.3d 810, 814 (5th Cir.1990).

However, to have a valid compromise, "there must be a meeting of the minds between the parties as to what they intended when the compromise was reached." *Parich*, 919 F.2d at 914, *citing Succession of Magnani*, 450 So.2d 972, 975 (La.App. 2nd Cir.1984). "A compromise agreement must therefore be unambiguous, perfect and complete in itself so that nothing is left for ascertainment by parol proof." *Id.*

As the Louisiana Supreme Court has explained since *Parich*, the meaning of a compromise, as any other contract, is "ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or contradict the terms of the instrument." *Brown v. Drillers, Inc.*, 630 So.2d 741, 748 (La.1994). There is one exception to this rule. When the parties disagree on the scope of the compromise agreement, "extrinsic evidence can be considered to determine exactly what differences the parties intended to settle." *Id.*

Even this exception is limited, however, to cases where "the releasor was mistaken as to what he or she was signing, even though fraud was not present . . . or . . . the releasor did not understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim." *Id.*

■ The Court finds that the scope of the agreement is not at issue here, and, thus, the Court cannot and does not consider parol evidence in construing this agreement. It is clear that the parties were attempting to settle the issue of whether Exxon was covered under the policy at issue.

■ The question then becomes the meaning of the contract within its "four corners." As noted, under Louisiana law, the general rules of contract interpretation apply to construction of a compromise. *Id.* at 748. The most important of these rules, for present purposes, is that "the contract must be construed as a whole and in light of attending events and circumstances." *Id.* While it is obvious that the agreement was designed to settle the dispute between Exxon and St. Paul as to coverage, that is where the agreement's obvious nature ends under the attendant facts and its ambiguous nature begins.

■ The policy itself is referenced in the recitals of the "Settlement Agreement" but is mentioned nowhere else. Neither is there any mention of any limits that St. Paul has to pay under the agreement, despite the $500,-

---

5. "A compromise instrument is governed by the same general rules of construction applicable to

contracts." *Brown v. Drillers, Inc.*, 630 So.2d 741, 748 (La.1994).

000 limit per "occurrence" under the policy. Nor is there any reference in the "Settlement Agreement," notwithstanding that the alleged injuries to the five men occurred on potentially four different dates, of whether these incidents constituted one "occurrence" or "accident" under the policy, two "occurrences" or "accidents" under the policy, or five separate "occurrences" or "accidents." [6] Indeed, the "Settlement Agreement" does not even use the language of the insurance policy, which states under the "Protection and Indemnity Clauses" that "[l]iability hereunder in respect of any accident or occurrence is limited to the amount declared and insured." Instead, the fourth recital in the "Settlement Agreement" only refers to all of the "alleged incidents" in which the men were injured.

Following a recitation of the facts, the "Settlement Agreement" merely launches into a process by which the parties are to contribute payments for their share of claims and expenses.

Therefore, on the face of the document, the Court finds it to be ambiguous as to whether St. Paul has to pay more than $500,000 under the "Settlement Agreement" or not. To construe the "Settlement Agreement" as not calling for any limits on payment could lead to the potentially absurd result that St. Paul would have to pay $2.5 million in claims, if only one or two "accidents" or "occurrences" were involved, when the original dispute was whether there was any coverage at all. Such an interpretation also casts doubt as to whether Exxon and St. Paul had made "reciprocal concessions ... in adjustment of their differences." *Rivett*, 508 So.2d at 1359.

On the other hand, it is unclear from the words of the agreement that St. Paul's payments are limited to $500,000. In addition to the fact that such a limitation is not found in the document, the Court cannot interpret the "Settlement Agreement" as providing such a limitation because of the potentially four dif-

ferent dates of alleged injury and because of the possibility of five alleged injuries. Further, the "Settlement Agreement" lacks any explanation as to whether these alleged injuries constitute one or more "accidents" or "occurrences" under the policy.

Cases construing the terms "occurrence" and "accident" under Louisiana law offer no assistance in interpreting the "Settlement Agreement." [7] These cases are fact-intensive and relate specifically to how the terms are defined and used in the policies. For example, in *Lombard v. Sewerage and Water Board of New Orleans*, 284 So.2d 905, 915 (La.1973), the Louisiana Supreme Court found that when "occurrence" is substituted for "accident" in a policy, "the intention manifested by this change is to broaden coverage." Further, "occurrence" must be viewed "from the point of view of the many persons whose property was damaged." *Id.* Thus, the Louisiana Supreme Court held that cumulated activities causing damage to separate plaintiffs constitute separate occurrences. *Id.*

In a case where the policy language was construed to equate "occurrence" with "accident," the Louisiana First Circuit Court of Appeal found *Lombard* factually inapplicable but still found separate "occurrences." *Miley v. Continental Insurance Company*, 645 So.2d 1166, 1168–69 (La.App. 1st Cir.1994). Two auto accidents had occurred at separate places on Interstate 12 fifteen minutes apart, caused partly by smoke from a "controlled burn" on an adjacent tract of land. *Id.* at 1167. The court distinguished *Lombard*, noting that the Supreme Court's "finding of an occurrence was based on continuous or repeated exposure to the condition (pile-driving activities) and not on an accident in the ordinary sense of the word." *Miley*, 645 So.2d at 1169. In *Miley*, "[h]owever, the smoke itself, unlike the pile-driving in *Lombard*, did not damage anything; the smoke

---

**6.** As noted, according to the "Settlement Agreement," three men were injured on set of days and two on another.

**7.** Although interpretation of marine insurance contracts is governed by federal law, the law of Louisiana is applicable in construing insurance

contracts delivered in Louisiana, such as this one (R.Doc. 54), "if there is no federal law, legislative or judicial, relating to the question." *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 894 (5th Cir. 1994). The Court's research as found no applicable federal law in this matter.

was merely a contributing cause of the two sets of collisions." *Miley*, 645 So.2d at 1169.

In *Whetstone v. Dixon*, 616 So.2d 764, 773 (La.App. 1st Cir.1993), the court also distinguished *Lombard*, concluding that the policy's specific, limiting definition of "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions," set the case apart from *Lombard*. The court of appeal also factually distinguished *Lombard*, finding that the injuries of one person and death of another in one auto accident was one "accident" or "occurrence." *Whetstone*, 616 So.2d at 773–74.

In the present case, the terms of the settlement agreement do not specify how many "accidents" or "occurrences" there were. The agreement only specifies that three men were injured on one "and/or" another day and that two other men were injured on one "and/or" another day different from the first two dates. Further, the facts of the injuries, including whether the men were injured as a result of repeated, continuous causes or separate, distinct causes, are not set forth in the agreement.[8]

Due to the vague and ambiguous nature of the "Settlement Agreement," the Court finds that there was no meeting of the minds between St. Paul and Exxon as to exactly what they intended in the "Settlement Agreement" as to the amount of payments by St. Paul. Hence, there was no valid compromise. *Parich, supra*.

Finally, the Court briefly addresses the arguments made by the parties. First, to the extent that either of the parties make any arguments based on parol evidence,[9] these contentions are not considered for reasons set forth above. Second, Exxon argues that, because the only references to the policy at issue are in the "recitals" portion of the agreement, it is obvious that the parties in-

tended to exclude the $500,000 policy limit. The Court rejects this argument because it ignores the admonition of the Louisiana Supreme Court to construe the contract at issue in light of its attendant facts and circumstances. *Brown*, 630 So.2d at 748. The policy itself is clearly an attendant fact.

Therefore, in conclusion, the Court finds that there are no genuine issues of material fact and that St. Paul is entitled to summary judgment as a matter of law. Conversely, Exxon's motion for summary judgment is denied.

Accordingly,

IT IS ORDERED that the motion for summary judgment by Exxon Corporation is DENIED.

IT IS FURTHER ORDERED that the motion for summary judgment by St. Paul Fire & Marine Insurance Company is GRANTED.

---

8. For example, as to the two men allegedly injured on April 26 "and/or" April 27, 1991, the recital in the "Settlement Agreement" only states that the men were "alleged to have sustained injuries as a result of the inhalation of fumes." However, the recital does not state whether the inhalation occurred at the same or different times or over a period of time. (R.Doc. 29, Exh. A.)

9. These arguments are based on the depositions of the drafters of the "Settlement Agreement" and their descriptions of the intentions of the parties and actions of the parties that allegedly signal intent.