508 So.2d 1356 (1987)
Mr. and Mrs. Wallace P. RIVETT, Jr.
v.
STATE FARM FIRE AND CASUALTY COMPANY.
No. 86-C-1205.
Supreme Court of Louisiana.
June 22, 1987.
*1357 J.J. McKernan, Julia Taylor, McKernan & Taylor, Baton Rouge, for applicants.
William Janney, Lane, Fertitta, Lane & Tullos, Baton Rouge, for respondent.
LEMMON, Justice.
The principal issue in this case is whether plaintiffs' acceptance of a payment from their homeowner's insurer of an amount admittedly due by the insurer for fire damage to their residence and their unilateral execution of a "Property Claim Agreement", when the amount paid was less than the policy limits of the dwelling coverage and there was no mutual agreement in writing that the payment was made and accepted in full settlement of the claim, constituted a compromise which formed a valid basis for the insurer's plea of res judicata.
On June 15, 1983, the residence owned by plaintiffs and insured by defendant was struck by lightning and was damaged by the resulting fire. The homeowner's policy issued by defendant provided coverage against loss caused by fire in the amount of $185,000 for the dwelling and $138,750 for the contents.
On June 30, 1983, a contractor appraised the damage at plaintiffs' request and estimated that the building could be repaired at a cost of $125,188.39. When plaintiffs persisted in questioning whether the damage could be repaired as estimated, defendant agreed to consider any other damage estimate obtained by plaintiffs.
On August 2, 1983, defendant mailed to plaintiffs' attorney a proof of loss form, requesting a list of the contents and stating a desire to reach agreement on the damage to the building. Plaintiffs' attorney, however, had already informed defendant's adjuster that plaintiffs expected *1358 to receive the total policy limits for dwelling coverage.[1]
On August 8, 1983, plaintiffs' attorney authorized defendant to negotiate directly with plaintiffs. The following week, plaintiffs executed the proof of loss form showing dwelling damage of $129,651.19 and contents loss of $247,650.34.[2]
On November 1, 1983, plaintiffs signed a "Property Claim Agreement" which contained the following language:
"1. PROPERTY CLAIM AGREEMENTThis Property Claim Agreement is submitted and accepted in lieu of a Sworn Statement in Proof of Loss.
"The undersigned hereby acknowledges the receipt of $98,399.99 from the State Farm Fire & Casualty Company for Actual Cash Value loss or damage, resulting from a Fire, occurring on or about the 15th day of Day (sic), 1983."
. . . . .
"2. ADDITIONAL PAYMENT AGREEMENTUSE ONLY WHEN ADDITIONAL PAYMENT BECAUSE OF REPLACEMENT COST PROVISIONS MAY BE MADE. (Additional claim must be submitted in accordance with the Policy Conditions.)
"It is further agreed, that when the repair or replacement of the property damaged as a result of the aforesaid occurrence has been completed, THE UNDERSIGNED WILL BE ENTITLED TO AN ADDITIONAL PAYMENT OF THE SMALLER OF THE FOLLOWING AMOUNTS:
"1. The amount actually expended to complete the repair or replacement in excess of actual cash value payment shown above.
"2. The sum of $31,251.20, which is the agreed amount of betterment involved."
Plaintiff signed both sections of the document, but defendant did not sign the document at all. Neither the document nor the check contained any words indicating a settlement of the claim or a release of the insurer.
In December, 1983, defendant cancelled the policy, stating that the building was no longer in a condition which required insurance coverage.
In February, 1984, plaintiffs secured two additional appraisals which concluded that the building was a total loss. Plaintiff, who was formerly a building contractor, began tearing down the building for safety purposes. When he quickly confirmed his previous belief that the building was damaged beyond repair, he completed the demolition and salvaged some of the materials.
Plaintiffs filed this action on May 1, 1984. Defendant filed a peremptory exception of res judicata, relying on the Property Claim Agreement. Defendant did not introduce any testimony to dispute plaintiff's deposition testimony.
The trial judge sustained State Farm's exception without assigning reasons. In an unpublished per curiam opinion, 488 So.2d 1341, the court of appeal affirmed, holding that "an accord and satisfaction of the claim took place when Rivett endorsed and negotiated the check".[3] We granted certiorari. 493 So.2d 1207.
*1359 A compromise, as between the interested parties, has a force equal to the authority of the thing adjudged.[4] La.C.C. art. 3078. Thus, a valid compromise may form the basis of a plea of res judicata.[5]Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3rd Cir.1967); S. Litvioff, 6 Louisiana Civil Law TreatiseObligations, Book 1 § 391.5 (1984 supp.). The present case turns on whether the parties entered into a valid contract of compromise.
Compromise is defined by La.C.C. art. 3071 as follows:
"A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
"This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter by written in a more convenient form."
The purpose of a compromise, therefore, is to prevent or to put an end to litigation. The essential elements of a compromise are (1) mutual intention of putting an end to the litigation and (2) reciprocal concessions of the parties in adjustment of their differences.[6] The Code also specifically requires a contract in writing.[7] The party urging an exception of res judicata based on a contract of compromise has the burden of proving each of the essential requirements by a preponderance of the evidence.
The critical issue in determining the validity of the alleged compromise in this case is whether defendant proved that the parties mutually intended to put an end to the litigation. Contrary to the intermediate court's conclusion, proof of plaintiffs' endorsement and negotiation of the $98,399.99 check from defendant did not in itself establish a compromise. Defendant was plaintiffs' own insurer. La.R.S. 22:658 requires an insurer to pay any claim due to its insured within sixty days after receipt of satisfactory proofs of loss and authorizes the imposition of penalties and attorney's fees in the event of the insurer's failure to do so. When there is a dispute over the amount due by the insurer to its insured under a valid claim, the insurer, in order to fulfill its statutory obligation, must make an unconditional payment of the minimum amount "over which reasonable minds could not differ", leaving the insured completely free to file an action to recover the balance of the claim which is in dispute. McDill v. Utica Mutual Insurance Co., 475 So.2d 1085, 1092 (La.1985); S. McKenzie and H. Johnson, 15 Louisiana Civil Law TreatiseInsurance Law and Practice § 131 (1987 supp.).
Here, defendant made the payment under the dwelling coverage without any language on the check or on the Property Claim Agreement indicating a mutual intent of the parties to put an end to the litigation. One might reasonably infer that the payment was made by defendant and accepted by plaintiffs in full settlement of the claim and with the intention of putting an end to the potential litigation. However, *1360 it is equally plausible for one to infer that defendant conceded that at least $98,399.99 was due to plaintiffs on their claim under dwelling coverage and that the payment was made to fulfill defendant's statutory obligation to make an unconditional payment of the minimum amount reasonably due so as to avoid penalties and attorney's fees.[8] When an insurer desires for a payment to its insured to constitute a valid contract of compromise, it is up to the insurer to make clear and unequivocal the mutual intention of the parties. No language in the check or the Property Claim Agreement indicated any intent by either party that the payment was anything other than the amount reasonably necessary to satisfy defendant's statutory obligation. Therefore, the payment was equivocal, and on the evidence in this record it is at least equally probable that defendant unconditionally tendered, and plaintiffs accepted, the sum of $98,399.99 in discharge of defendant's statutory obligation, without any intention to settle the claim in its entirety.[9]
Defendant argues, however, that the endorsement and negotiation of the check was not the only evidence tending to show an intent to terminate the litigation. Defendant argues that the language of the Property Claim Agreement should be interpreted as an agreement by the insureds to limit their claim to $129,615.19 and by the insurer to pay $98,399.99 in partial settlement and to obligate itself to pay any additional amount up to $31,251.20 which plaintiffs actually expended to complete the repair or replacement of the damaged property.[10] This argument has several deficiencies. First, defendant did not sign the Property Claim Agreement which it is now trying to enforce.[11] An even more basic deficiency, however, is the lack of reciprocal concessions by the parties.
Under defendant's argument, plaintiffs' concession as cause for the contract of compromise was the reduction of their claim from the $185,000 policy limit to $129,615.19, while defendant's concession as cause for the contract of compromise was the payment of $98,399.99 and the undertaking of an obligation to pay up to an additional $31,251.20. However, defendant was already obligated to pay approximately $98,399.99 under La.R.S. 22:658, under threat of imposition of penalties and attorney's fees, and this payment could not effectively serve as a reciprocal concession for plaintiffs' lowering their claim. Further, defendant's undertaking the obligation to pay up to $31,251.20 in excess of the payment of the amount admittedly due could not serve as consideration for plaintiffs' lowering their claim because defendant was already bound under its insurance policy to pay any actual loss in excess of the unconditional payment of $98,399.99.[12] Aside from the problem of the lack of signature, defendant made no concession in the agreement to do anything it was not already obligated to do before plaintiffs executed the document, and there was therefore no reciprocal concession by defendant for plaintiffs' concession of lowering their claim.
*1361 Finally, the document (if valid) did not purport to put an end to the dispute between the parties.[13] After defendant paid the amount it was obligated to pay under La.R.S. 22:658, the remaining dispute was whether defendant owed an additional $86,600.01 ($185,000.00$98,399.99), as plaintiffs claimed, or nothing, as defendants claimed. The document did not settle this dispute, but rather attempted to substitute another disputewhether defendant owed $31,251.20 or nothing.[14] For this substitution of disputes, consideration flowed only to one party. A contract which does not put an end to the dispute through mutual concessions cannot constitute a compromise.
The practical effect of the Property Claim Agreement was (as stated in the document) to serve in lieu of a proof of loss. An insured can amend a proof of loss at any time prior to payment in full, and plaintiffs effectively did this by filing the instant action.
We conclude that defendant failed to prove the mutual intention of the parties to terminate the litigation by reciprocal concessions in adjustment of their differences. Therefore, there was no valid compromise, and the exception of res judicata should have been overruled.
Accordingly, the judgments of the lower courts are reversed, the exception of res judicata is overruled, and the case is remanded for further proceedings.
NOTES
[1] The record contains no transcript or note of evidence, but plaintiff husbands deposition and the documents introduced therewith were offered into evidence at the hearing on the exception. In his deposition, plaintiff stated, in answer to a leading question, that his attorney had made this statement to the adjuster.
[2] Between June 16, 1983 and November 9, 1983, defendant paid plaintiffs a total of $138,000 in four separate payments for loss of the contents. On July 24, 1985, defendant deposited the sum of $750, plus interest and penalty, into the registry of court, thereby paying the entire policy limits for contents coverage. This deposit was made after the judgment of the trial court in tne present case. Although plaintiffs had claimed in their petition that $6,000 paid under loss of use coverage was deducted from the contents coverage limits, contents coverage has not yet become a real issue in the case.
[3] Accord and satisfaction is a common law doctrine whose use in this civil law jurisdiction is questionable. Louisiana has specific codal provisions governing the requirements for contracts of compromise, and it appears unnecessary to import a common law doctrine to handle a situation adequately covered by the Civil Code. See Louisiana National Bank of Baton Rouge v. Heindel, 365 So.2d 37 (La.App. 4th Cir.1978) (Lemmon, J., concurring).
[4] Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal. La.C.C. art. 3556(31).
[5] Res judicata literally means "the thing has been adjudicated". Ballentine's Law Dictionary (3rd ed. 1969).
[6] Compromise is a contract. La.C.C. art. 3071. The requirement of reciprocal concessions in adjustment of the differences between the parties is the civil counterpart of the common law requirement of consideration. Litvinoff, supra, § 390.
[7] This requirement does not make the compromise a solemn contract for which the writing is an essential formality. The writing is required only as a means of proof. 2 M. Planiol, Traite Elementaire de Droit Civil § 2291 (Louisiana State Law Institute Trans.1959); Litvinoff, supra, § 391.
[8] In oral argument defendant stated that its own appraisal of the damage was in the range of $96,000.
[9] In Boudreaux v. American Ins. Co., 264 So.2d 621 (La.1972), this court stated that proof by direct or circumstantial evidence is sufficient to constitute a preponderance when the evidence taken as a whole shows that the fact or causation sought to be proved is more probable than not. The court held that the defendant's negligence in that case was the most plausible or likely cause of the fire and that no other factor could be as reasonably ascribed as the cause. Here, either intent could be reasonably ascribed to the unspecified payment, and the evidence on the point did not preponderate in defendant's favor.
[10] The two amounts, $98,399.99 and $31,251.20, total $129,651.19, the amount of dwelling damage stated in the proof of loss.
[11] If the insured were attempting to enforce the agreement, the lack of the insurer's signature might be asserted as a defense to enforcement against the insurer.
[12] An insurer who is bound under the policy to pay the loss up to $185,000 simply cannot say that its agreement to pay a lesser amount proved as damages at trial is a valid consideration for the insured's agreement to lower his claim (effectively lowering the policy limits for which the insurer is exposed).
[13] The prevention or termination of litigation can serve as cause for the contract of compromise. Litvinoff, supra, § 399. Moreover, compromises are favored in law as a matter of public policy. Nevertheless, there simply was no avoidance of litigation by means of reciprocal concessions in this case.
[14] Another objectionable feature in defendant's attempt to use this document as a contract of compromise is that defendant is attempting to require plaintiffs to give up their right to tear down a structure which cannot be economically repaired (if this is proved at trial) without any consideration for this concession.