# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1223

CHADWICK F. MONTGOMERY

VERSUS

RUSSELL LEE MONTGOMERY, III, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 05-C-4917-A
HONORABLE JAMES PAUL DOHERTY, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of J. David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Edward O. Taulbee, IV
Taulbee & Associates
P.O. Box 2038
Lafayette, LA 70502-2038
(337) 269-5005
COUNSEL FOR DEFENDANT/APPELLEE:
    Louisiana Farm Bureau Mutual Ins. Co.

Steven J. Bienvenu
Falgoust, Caviness & Bienvenu
P. O. Box 1450
Opelousas, LA 70571
(337) 942-5811
COUNSEL FOR DEFENDANT/APPELLEE:
    Russell Lee Montgomery, III

**Nora M. Stelly**
**Charles M. Kreamer**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Lawrence B. Sandoz, III**
    **Continental Casualty Company**

**J. Bradley Duhe**
**Ottinger Hebert, L.L.C.**
**P. O. Drawer 52606**
**Lafayette, LA 70505-2606**
**(337) 232-2606**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Chadwick F. Montgomery**

**GREMILLION , Judge.**

Plaintiff-appellant, Chadwick Montgomery (Chad), and defendant-appellant, Lawrence B. Sandoz, appeal the trial court's judgment granting summary judgment in favor of defendant-appellee, Farm Bureau, dismissing it from the case.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2004, Chad was standing in the bucket of a front-end loader of a 1991 Ford Model 5900 tractor using it as a work platform to trim branches from a felled tree on his father's property.  Chad's father, Russell Lee Montgomery ("R.L."), was operating the tractor and, inadvertently, pushed the quick release lever for the bucket causing Chad to be dumped to the ground. R.L. owned the property where the accident occurred, although it was being leased to his son, Russell Montgomery.  The facts surrounding the accident are not in dispute.

Farm Bureau provided several insurance policies to R.L., including a homeowners policy (HO358178), and a farm liability policy (GF100370). American Reliable Insurance Company provided a policy of insurance to Russell for a mobile home and surrounding property located at 1648 Montgomery Road.

Following the accident, Chad contacted family friend and attorney, Sandoz, to pursue his claim for injuries.  Sandoz inquired of R.L. what policies were available.  Sandoz claims that he came to understand, after conversations with Farm Bureau agent, David Richard, that the Farm Bureau policy would only provide $1,000 in med-pay coverage.

In November 2004, Chad accepted a $1,000 check from Farm Bureau and signed a release of claims.  In June 2005, Chad settled with American Reliable for its full policy limits of $100,000.  Thereafter, Chad began to feel that his injuries

were worse than he originally thought and he and Sandoz also came to believe that Farm Bureau provided additional coverage for Chad's injuries.

Subsequently, Sandoz began negotiating settlement amounts with Farm Bureau, but was ultimately unsuccessful. In October 2005, Chad filed a petition for damages against several defendants including Farm Bureau and Sandoz. Chad alleged that Farm Bureau "fraudulently, intentionally, and/or negligently made material misrepresentations and/or omissions regarding the coverage and terms of certain policies of insurance" and, in the alternative, that "as a result of the information and advice negligently given to Plaintiff by Defendant Lawrence B. Sandoz, III, Plaintiff, relying on same, agreed to the accept the limited coverage and sign the Release." Thus, Chad alternatively argued that Sandoz was liable to him for legal malpractice.

In March 2011, Farm Bureau moved for summary judgment arguing that the 2004 and 2005 settlement agreements barred any claims against it. Sandoz moved for summary judgment in April 2011, arguing that Farm Bureau's policies did not cover Chad's claims. Following a hearing, the trial court granted summary judgment in Farm Bureau's favor, but denied Sandoz's motion finding that material issues of fact existed regarding the claim of malpractice against Sandoz.

The trial court rendered written reason for judgment in June 2011 and a judgment in August 2011. Chad and Sandoz now appeal now appeal the grant of summary judgment in favor of Farm Bureau.

**ISSUES**

Chad assigns as error:

1. The district court erred in failing to recognize that Farm Bureau's fraudulent misrepresentations of its coverage to Plaintiff and his attorney resulted in Plaintiff executing both releases, not just the 2004 Farm Bureau release, but also the 2005 American Reliable release, detrimentally relying on Farm Bureau's misrepresentations,

2

such that genuine issues of material fact regarding such fraudulent misrepresentations preclude summary judgment based on either release.

2. The district court erred by dismissing Plaintiff's claims against Farm Bureau for is misrepresentations of its policy coverages, pursuant to La.R.S. 11:1973 (formerly 22:1220), despite those claims being a separate and distinct right of action and not being included in the two releases at issue.

3. The district court erred by dismissing Plaintiff's claims for a hernia and neck injury that were not contemplated, and therefore constituted future claims, and were not expressly included in the compromise, when the Plaintiff executed the two releases relied upon by Farm Bureau.

4. The district court erred by granting Farm Bureau's summary judgment and not finding that the 2004 Farm Bureau release executed by Plaintiff was invalid for reason of (a) lack or failure of consideration, (b) procurement by fraud, (c) consent vitiated by error or mistake in the cause, and/or (d) lack of meeting of the minds over the scope and intent of what was to be released.

Sandoz assigns as error:

1. The trial court failed to recognize that Farm Bureau's alleged fraudulent misrepresentations of its coverage to plaintiff resulted in plaintiff executing both releases, not just the 2004 release, such that issues of fact regarding such fraudulent misrepresentations preclude summary judgment based on either release.

2. The trial court dismissed plaintiff's claims against Farm Bureau for its alleged misrepresentations of its policy coverages despite those claims not being included in the two releases at issue.

3. The trial court dismissed claims for an alleged hernia and neck injury that were not contemplated, and therefore constituted future claims, when the plaintiff executed the two releases relied upon by Farm Bureau.

## DISCUSSION

### *Summary Judgment*

On appeal, summary judgments are reviewed de novo. *Magnon v. Collins,* 98-2822 (La. 7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is

3

appropriate. *Id.* This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). This means that judgment should be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. *Id.* If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id.*

Material facts are those that determine the outcome of the legal dispute. *Soileau v. D & J Tires, Inc,* 97-318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied,* 97-2737 (La. 1/16/98), 706 So.2d 979. In deciding whether certain facts are material to an action, we look to the applicable substantive law. *Id.* Finally, summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ.P. art. 966 (A)(2).

The trial court, in its written reasons for judgment found in part:

> Once the American Reliance release was signed on June 6, 2005, R.L. Montgomery, the Farm Bureau insured, was released, acquitted and forever discharged from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation on account of or in any way growing out of any and all known and unknown personal injuries and property damage resulting or to result from the accident that occurred on or about the 11th day of October in the year 2004 at or near 1648 Montgomery Road, Opelousas, Louisiana. The release did not reserve any rights either against R.L. Montgomery up to the limits of his available insurance or against his insurance companies.
>
> This Court finds that the release of June 6, 2005 released R.L. Montgomery and also released Farm Bureau from having to pay any sums under the terms of its policy.
>
> It is on this basis that the Court grants the motion for summary judgment filed by Louisiana Farm Bureau Casualty Insurance Company and Louisiana Farm Bureau Mutual Insurance Company. Because of the Court's ruling that the American Reliable release of Russell Montgomery also released Farm Bureau, the Court is of the

4

opinion the issue of the validity of the Farm Bureau release dated November 30, 2004 is mooted.

Having reviewed the record de novo, we agree with the trial court's findings. In *Randall v. Martin*, 03-1311, p. 4-6 (La.App. 5 Cir. 2/23/04), 868 So.2d 913, 915-916, the court summarized the law pertaining to compromises:

> A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. La. C.C. art. 3071. *Dumas v. Angus Chemical Co.*, 31,969 (La.App. 2 Cir. 8/20/99), 742 So.2d 655. A release executed in exchange for consideration is a compromise. *Brown v. Drillers Inc.*, 93-1019 (La.1/14/94), 630 So.2d 741. A compromise regulates only the differences which appear clearly to be comprehended therein by the intention of the parties, "whether it be explained in a general or particular manner," and does not extend to differences which the parties never intended to include. La. C.C. art. 3073; *Ortego v. State*, 96-1322 (La.2/25/97), 689 So.2d 1358. Further, a general release will not necessarily bar recovery for those aspects of the claim not intended to be covered by the release. *Dimitri v. Dimitri*, 00-2641 (La.App. 4 Cir. 6/30/02), 809 So.2d 481, 485, citing *Moak v. American Automobile Insurance Company*, 242 La. 160, 134 So.2d 911 (1961).
>
> A compromise therefore carries the authority of things adjudged, and cannot be attacked for error of law or lesion. La. C.C. art. 3078. A compromise may be rescinded whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded where there exists fraud or violence. La. C.C. art. 3079. Public policy favors compromise agreements and the finality of settlements. *Brown v. Drillers, Inc.*, *supra* at 757; *Rivett v. State Farm Fire & Cas. Co.*, 508 So.2d 1356 (La.1987). The party seeking recision of a settlement agreement bears the burden of proving its invalidity. *Hoover v. Boucvalt*, 747 So.2d 1227 (La.App. 4 Cir.1999), *writ denied*, 754 So.2d 969 (La.2000).
>
> The parties' intent in executing a compromise is normally discerned from the four corners of the document; extrinsic evidence is normally inadmissible to explain, expand or contradict the terms of the instrument. *Brown v. Drillers, Inc., supra.* Nevertheless, when the parties to a compromise dispute its scope, they are permitted to raise factual issues regarding whether the unequivocal language of the instrument was intended to be truly unequivocal. *Id.* However, such latitude is granted only in the presence of some "substantiating evidence" of mistaken intent. *Dimitri v. Dimitri, supra*, 809 So.2d at 485; *Duet v. Lucky*, 621 So.2d 168 (La.App. 4 Cir. 1993). In *Brown v.*

*Drillers Inc., supra*, the Supreme Court held that "substantiating evidence" must establish:

> either (1) that the releaser was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releaser did not fully understand the nature of the rights being released or that the releaser did not intend to release certain aspects of his or her claim.
>
> 630 So.2d at 749.
>
> In the absence of such evidence, the compromise is subject to the normal rules of contract analysis and enforced precisely as written. *Duet v. Lucky, supra; Brown v. Drillers Inc., supra.*

In *Brown,* 630 So.2d at 749-50, the supreme court stated that when the factual circumstances do not fall within one of the categories above noted:

> Louisiana courts, applying LSA-C.C. Art. 2046's general rule of construction, have not hesitated to confine their analysis to the four corners of the instrument. When as in that instance, a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and thus summary judgment is appropriate. *Wilson v. Cost + Plus of Vivian, Inc.,* 375 So.2d 683, 685 (La.App. 2 Cir. 1979); *Horton v. Mobley*, 578 So.2d 977, 982 (La.App. 2 Cir. 1991).

Louisiana Revised Statute 22:1973 imposes a good faith duty upon an insurer:

> A. An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
>
> > (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

6

The releases at issue include the Farm Bureau release executed in November 2004.

The face of the Farm Bureau check states "<u>In Full Payment For</u>: ANY AND ALL

CLAIMS." The release agreement itself, signed by Chad, states in part:

> I, Chadwick Montgomery, . . . (hereafter releasor) being of lawful age, do hereby release, acquit and forever discharge the said payor(s), their agents and employees, officers, directors, and all other persons, firms or corporations who are or might by liable, form any and all actions, causes of actions, claims, demands, damages, costs, loss of services, loss of consortium, expenses, punitive and/or exemplary damages, attorney fees, statutory penalties, interest and compensation on account of or in any way growing out of any and all known and unknown death or deaths, personal injuries and property damage, resulting or to result from an accident that occurred on or about the 11<u>th</u> day of <u>October</u> 20<u>04</u> by reason of <u>Fall</u> including any other claims that I/we may have which arose at the time of or prior to such accident, or arising out of the manner that the company handled, settled or defended the releasor's claims or resulting from any obligation arising out of any penalty statute, and do hereby for myself (or ourselves) heirs, executors, administrators, successors and assigns, covenant with the said payor(s), their agents and employees, officers, directors and all other persons, firms or corporations which are or may be liable to indemnify and save them harmless from all claims and demands, costs, loss of services, loss of consortium, expenses and compensation on account of or in any way growing out of said accident or its results, known and unknown, or prior claims, both to persons and property.

> I/we know and understand that the injuries sustained may be permanent and progressive and recovery therefrom is uncertain and indefinite and there may be injuries or results of injuries not yet evident, recognized or known and making this release, I/we rely wholly upon my/our judgment, knowledge and belief as to the nature, extent and duration of said injuries and as to the questions of liability involved and have not been influenced by any representations regarding the same; that the claims are doubtful and disputed and the above consideration is accepted in full compromise, accord and satisfaction thereof, and the payment of said consideration is not an admission of liability.

The American Reliable release of June 2005 signed by Chad and notarized

by Sandoz, states in part:

**RELEASE OF ALL CLAIMS**

> FOR AND IN CONSIDERATION of the payment to **CHAD MONTGOMERY** at this time of the sum **ONE HUNDRED THOUSAND AND 00/100 Dollars ($100,000),** the receipt of which is hereby acknowledged, I/we, being of lawful age, do hereby release,

7

acquit and forever discharge **R L MONTGOMERY, RUSSELL MONTGOMERY IV, AMERICAN RELIABLE INSURANCE COMPANY AND ASSURANT SOLUTIONS, INC.** and all other persons, firms and corporations who might be liable or from any and all actions, cause of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from the accident that occurred on or about the **11**th day of **OCTOBER** in the year of **2004** at or near **1648 MONTGOMERY RD., OPELOUSAS, LA 70579**.

I/we hereby declare and represent that the injuries sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our judgment, belief and knowledge of the nature extent and duration of said injuries, and that I/we have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms, or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.

 . . . .

It is further understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of **R L MONTGOMERY, RUSSELL MONTGOMERY IV, AMERICAN RELIABLE INSURANCE COMPANY AND ASSURANT SOLUTIONS, INC.** by whom liability is expressly denied.

I/we further agree that this release shall not be pleaded by me/us as a bar to any claim or suit.

This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not mere recital.

I/we further state that we I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act.

Deposition testimony was submitted in support of the motions for summary judgment. Richard testified that he was very friendly with the Montgomery family, having known them all of his life; he worked with R.L. at the State Police; was a member of a masonic lodge with him; and, he and R.L. belonged to the same

hunting club. Richard stated that he watched Chad "grow up." Richard testified that Sandoz inquired in late October 2004 as to whether any medical coverage existed for Chad's claims. Richard said that Sandoz did not ask about any other coverage other than the med-pay. He admitted that if med-pay coverage exists there must be some underlying liability coverage however, since Sandoz did not ask about it, Richard did not further discuss any other available coverage.

Richard further stated that R.L. attended a social function at his house and that he specifically asked R.L. if he was planning to file a claim against Farm Bureau to which R.L. responded "We're not going to go after Farm Bureau," instead indicating that the mobile home insurer would be pursued. Richard denied ever telling R.L. that his various Farm Bureau policies only provided $1,000 in med-pay coverage. Richard stated that he informed R.L. that his homeowner's policy extended to Russell and Chad's residences and that his farm liability policy was inapplicable to any claims relating to this injury. Richard described his relationship with Chad as close friends, speaking on the phone every two to three days. He stated he did not tell R.L. that there was no coverage, but that if there was coverage it would have been under the homeowner policy, not the farm policy. However, Richard opined that there was no coverage under the homeowner policy because of an exclusion for the use of a vehicle with horsepower in excess of forty. The tractor in question had a horsepower of seventy-two. Richard described the med-pay as essentially a "gift."

Rhett Guillory, an adjuster with Farm Bureau since 1996, testified that he also knew the Montgomerys, mostly because of their relationship with Richard. Guillory testified that he only discussed med-pay coverage with Sandoz. He could not recall if Sandoz had asked him whether any other coverage was available. Guillory said pertaining to his discussion with Sandoz:

9

> We figured it was worth approximately $40,000, well within the $100,00 limits the other carrier had. So, for a waiver of subrogation and the full and final release of any and all claims, I paid the $1,000 and agreed to forego any subrogation. So it is a general release.

He opined that if there had not been a release, there would not have been coverage under the homeowner's policy because of the horsepower exclusion, and that the exclusion did not apply to the med-pay coverage. He said the farm liability policy was inapplicable.

Sandoz testified he has known R.L. for many years and knew of Chad as R.L.'s son. He also testified that he represented Chad once before in an accident case. Sandoz said that he has known Richard since first grade and that Richard is his insurance agent. Sandoz stated that prior to Chad coming into his office, R.L. had contacted him and informed him that he had contacted American Reliable and initiated a claims process. Sandoz stated that Chad brought the claim number with him when he came into his office. Sandoz said that he told R.L. to ask Richard what kind of coverage might be available under the Farm Bureau policy and to let him know what he found out. Sandoz said that R.L. told him that only med-pay coverage was available. Sandoz admitted:

> I sent R.L. to talk to David to see if there was any coverage. R.L. was informed, no, there was no coverage.

> Now, R.L. comes back to me. I did not check with David. I relied on R.L. to accurately report what David said. I relied on David to answer truthfully. When the information gets back to me from R.L., who I – he then says, according to David we got no coverage. That's when I say, well let's see if we can get something out of them. Apparently they don't cover this.

When questioned as to whose responsibility it was to find out what coverage was available for his client, Sandoz responded:

> In this instance R.L. did the investigation on the homeowner's policy that we ultimately collected policy limits on. I also sent R.L., who is an extremely capable investigator, to go find out. We were all on the same team. We were looking for money.

10

Now, if there was any coverage, I relied completely on David telling the truth and R.L. repeating what he learned from David to me, and I had no reason to doubt or dispute anything either of those guys ever said.

Did I follow up and write a letter to Farm Bureau, no.

Chad testified that he was told by his father, Sandoz, and Richard that the Farm Bureau homeowner's policy would only pay med-pay. Chad said that he and Richard were friends and were around each other all the time. He said that Richard, himself, and his dad had been friends his entire life. Chad said that he relied on Sandoz, his father, and Richard to find out what insurances might apply to this accident. He stated that before he signed the Farm Bureau release, but after he hired Sandoz, he had multiple phone and in-person conversations with Richard in which he expressed his disbelief that the policy would only pay $1,000 for his injuries, and that Richard told him that was all the coverage that was available.

Chad testified he did not believe Sandoz explained the ramifications of either the Farm Bureau $1,000 med-pay release or the $100,000 release from American Reliable. However, he did state that he would have signed the latter anyway even if Sandoz had explained that he was releasing his father and American Reliable.

R.L. testified that Sandoz was his lawyer also and that Richard procured insurance for them all. He said Sandoz asked him to talk to Richard about his policies to see if any coverage was available for the accident. R.L. testified that Sandoz still did work for him. He said that Richard and Sandoz were like brothers.

In opposition to both Farm Bureau and Sandoz's motions for summary judgment, Chad filed the affidavit of Mark B. Landry, an insurance and risk advisor with over thirty-four years of experience, who attested that there would be coverage under either R.L. homeowner's or farm liability policy for the accident.

11

He stated the horsepower exception did not apply because an exception to an exclusion—the tractor was being used to service the residence—applied. However, even if it did apply, he opined that the farm liability policy provided coverage in that none of the exclusions apply and the accident took place at an "insured location" as defined in the policy.

***Chad's Assignments of Error One, Two, and Four; Sandoz's Assignments of Error One and Two***

Chad's assignments of error one, two, and four and Sandoz's assignments of error one and two all center around the same basic issue, i.e., whether Farm Bureau's agent, Richard, fraudulently misrepresented that no coverage was available for the accident at issue. "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La.Civ.Code art. 1953.

Obviously, Chad was represented by counsel when he signed both the Farm Bureau release and the American Reliable release. While Chad strenuously argues that he was fraudulently induced to sign the Farm Bureau release based on a misrepresentation of coverage, he makes no such argument regarding the American Reliable release, which clearly removes his father and any of his insurers from the equation. Chad argues in brief that he executed both releases as a result of Farm Bureau's misrepresentations regarding coverage. However, Chad admitted in deposition testimony that he would have signed the American Reliable release knowing that he was fully releasing his father. There is no allegation that this release, with its clearly enunciated terms and broad scope of the four corners of the document, was induced by fraud or error of any kind.

As the party seeking recision of the compromise agreement, Chad bears the burden of proving it was invalid. *Randall,* 868 So.2d 913. The law limits rescinding a valid compromise to errors pertaining to the person or the matter in dispute or if fraud or violence was present. *Id.* Thus, summary judgment is appropriate here if the record before us contains no evidence that would create a genuine issue as to the necessary fraud. We find that it does not**.** We agree with Farm Bureau that in analyzing the facts and circumstances surrounding the Farm Bureau release, there would be no genuine issue of fact that Chad would be unable to prove fraud on the part of Farm Bureau. As noted, the plain language of the Farm Bureau release reveals the intent of the parties to the compromise agreement. In consideration for the $1,000 Farm Bureau payment, Chad agreed to release Farm Bureau for any liability "on account of or in any way growing out of any and all known or unknown death or deaths, personal injuries and property damage, resulting from" the fall from the front-end loader. Pursuant to the normal rules of contract interpretation, the settlement terms are clear and explicit and encompass any injuries arising from the accident at issue.

Moreover, Chad failed to produce evidence that he would be able to meet his burden of proving that Farm Bureau fraudulently misrepresented the coverage available to him. The evidence establishes that Sandoz, the attorney responsible for handling Chad's claims, never requested in writing or otherwise any Farm Bureau policies, was never told by either Richard or Guillory that there was no coverage under the Farm Bureau policies, and was never misled by Richard or Guillory regarding R.L.'s Farm Bureau policies. There simply is insufficient evidence in the record to raise a genuine issue as to fraud on part of Farm Bureau.

***Chad's Assignment of Error Three; Sandoz's Assignment of Error Three***

Chad and Sandoz also argue that after the releases were signed, Chad discovered that he was suffering from other injuries that were not contemplated at the time he signed the release. Both the Farm Bureau and the American Reliable releases clearly contemplate any injury whatsoever, whether known or unknown, arising out of the October 2004 accident. Chad's argument that the releases are inapplicable to his hernia and neck injuries because the releases fail to expressly state them fails. If this qualified as a valid dispute over the scope of a compromise settlement, compromise settlements would have to be the length of novels in order to cover every possible injury that might arise out of any given accident. The terms "any and all known or unknown personal injury" clearly contemplates any bodily injury arising from the accident at issue. These terms are unambiguous and leave nothing to be misunderstood. *See Brown v. Simoneaux,* 593 So.2d 939 (La.App. 4 Cir. 1992); *Barnhill v. Consol. Med., Disability & Life Trust,* 569 So.2d 1115 (La.App. 3d Cir. 1990), *writ denied,* 573 So.2d 93 (La.1991). This assignment of error is without merit.

## CONCLUSION

The judgment of the trial court granting summary judgment in favor of Louisiana Farm Bureau Mutual insurance Company is affirmed. Costs of this appeal are to split equally between plaintiff-appellant, Chadwick F. Montgomery and defendant-appellant, Lawrence B. Sandoz, III.

**AFFIRMED**.

14