NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-604


BRIAN M. STELLY

VERSUS

JEANNE B. STELLY


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20133290
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.


REVERSED AND REMANDED.

**Daniel M. Landry, III**
**Post Office Box 3784**
**Lafayette, Louisiana 70502**
**(337) 237-7135**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Jeanne B. Stelly**

**D. Reardon Stanford**
**Hoyt & Stanford, L.L.C.**
**315 South College Road, Suite 165**
**Lafayette, Louisiana 70503**
**(337) 234-1012**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Brian M. Stelly**

**CONERY, Judge.**

Jeanne and Brian Stelly were married on April 28, 2010. Brian Stelly (Brian) filed a petition for divorce on June 28, 2013. Jeanne Stelly (Jeanne) filed a reconventional demand on September 19, 2013. She requested a divorce, both interim and permanent spousal support, and partition of the community property. Brian filed an exception of res judicata, claiming that the parties had previously reached an agreement to settle the issues of spousal support and the partition of community property.

A hearing on Brian's exception was held before the trial court on November 4, 2013. At the hearing, the transcripts of the pertinent e-mails between Jeanne, who was then unrepresented, and counsel for Brian, Mr. Daniel Stanford, were admitted into evidence by the trial court pursuant to a stipulation of counsel. The submission to the trial court also included what was referred to in the e-mail correspondence as a draft of a document entitled, "STIPULATION AND SETTLEMENT AGREEMENT REGARDING SPOUSAL SUPPORT, PARTITION OF COMMUNITY PROPERTY AND MATTERS INCIDENTAL THERETO" (Compromise Draft).

After the hearing, in open court, the trial court granted Brian's exception of res judicata and dismissed Jeanne's demands for both spousal support and partition of the community property, finding that a compromise agreement had been reached by the parties. A judgment was signed by the trial court on January 2, 2014, and on January 3, 2014, new counsel, Daniel M. Landry, was enrolled on behalf of Jeanne.

After the Judgment was signed, Jeanne filed a motion for new trial and requested that the trial court issue written reasons for ruling pursuant to

La.Civ.Code art. 1917. The trial court issued its written reasons on January 31, 2014, on the exception of res judicata and denied Jeanne's motion for new trial. Jeanne now timely appeals the trial court's judgment of January 2, 2014. The parties were granted a divorce on April 3, 2014, pursuant to La.Civ.Code art. 2374, and the divorce is not at issue on appeal. For the following reasons, we reverse and remand.

## ASSIGNMENT OF ERROR

Jeanne asserts the following assignment of error on appeal, "The trial court erred in granting the Exception of Res Judicata filed by Plaintiff-Appellee, Brian M. Stelly, concerning issues of interim and final spousal support, the detailed descriptive list and community property finding that an agreement had been reached which was a valid and enforceable compromise and settlement."

## LAW AND DISCUSSION

### *Standard of Review*

The proper standard of review is whether the trial court committed an error of law or made a factual finding that was manifestly erroneous or clearly wrong. *Gibson v. State,* 99-1730 (La. 4/11/00), 758 So.2d 782, *cert. denied,* 531 U.S. 1052, 121 S.Ct. 656 (2000). The supreme court's two-part test for appellate review of a factual finding requires: "1) The appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and 2) The appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous)." *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). The reviewing court must review the record in its entirety to make this determination. *Stobart v. State, DOTD*, 617 So.2d 880 (La.1993).

However, statutory interpretations are a question of law. *Shell v. Wal-Mart*

*Stores, Inc.*, 00-997 (La.App. 3 Cir. 3/21/01), 782 So.2d 1155, *writ denied*, 01-1149 (La. 6/15/01), 793 So.2d 1244. Although a reviewing court defers to a trial court's reasonable decision on a question or matter properly within the trial court's discretion, if the trial court's decision is based on an erroneous interpretation or application of the law, such an incorrect decision is not entitled to deference. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983).

Although Brian filed an "Exception of Res Judicata," in actuality the relief he was seeking was to enforce the settlement agreement negotiated between his counsel and Jeanne, who had no attorney at the time. Although "the doctrine of res judicata is ordinarily premised on a final judgment on the merits, it also applies where there is a transaction or settlement of a disputed or compromised matter that has been entered into by the parties." *Ortego v. State of Louisiana, Dep't. of Transp. and Dev.*, 96-1322, p. 6 (La. 2/25/97), 689 So.2d 1358, 1363.

Louisiana Civil Code Article 3071 provides the law applicable to a motion to enforce a settlement or compromise, "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." "Consequently, a party claiming res judicata based on a compromise agreement must have been a party to the compromise, and the authority of the thing adjudged extends only to the matters those parties intended to settle." *Ortego*, 689 So.2d at 1363. *See also Brown v. Drillers, Inc.* 93-1019 (La. 1/14/94), 630 So.2d 741.

Louisiana Civil Code Article 3072 requires, "[a] compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings." "The purpose of a compromise, therefore, is to prevent or to put an end to litigation. The essential

elements of a compromise are (1) mutual intention of putting an end to the litigation and (2) reciprocal concessions of the parties in adjustment of their differences." *Rivett v. State Farm Fire & Cas. Co.*, 508 So.2d 1356, 1359 (La.1987). "The party urging an exception of res judicata based on a contract of compromise has the burden of proving each of the essential requirements by a preponderance of the evidence." *Id.* Brian had the burden of proof in this case.

Using summary proceedings, the trial court found that a compromise existed pursuant to La.Civ.Code art. 3072 based on the e-mail correspondence between Jeanne and Mr. Stanford, which began on July 26, 2013 and concluded on August 12, 2013. Brian Stelly argued Jeanne Stelly evidenced her consent to settle in her e-mail exchanges, with his counsel. The trial court stated:

> The statutory requirement that the agreement to compromise be in writing does not mean that the agreement must be contained in one document; where two instruments, read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise has been perfected. *Dozier v. Rhodus*, 17 So.3d 302 (La. App.1 Cir. 5/5/09)

The trial court correctly found that the exchange of e-mails referenced *could* constitute a valid compromise of Jeanne's claims. The Louisiana Supreme Court in *Felder v. Georgia Pacific Corp.*, 405 So.2d 521, 524 (La.1981), held "where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement," the requirement of a writing is met.

The trial court also correctly found that:

> The parties' positions "may be" expressed in writings, including e-mails, which are recognized by the Louisiana Uniform Electronic Transactions Act, La. R. S. 9:2607. State law gives effect to both electronic contracts and signatures. Id. Such e-mails provide sufficient writings to establish the parties' intent to compromise and settle their obligations by acquiescence and agreement. See,

4

*Klebanoff v. Haberle*, 978 So. 2d 598, (La. App. 2 Cir. 03/19/08); *Dozier v. Rhodus*, 17 So. 3d 402 (La. App. 1 Cir. 5/05/09); and *Succession of Wilson*, 2013 WL 539323 (La. App. 3 Cir. 10/9/13); *Preston Law Firm v. Mariner Health Care Management*, 622 F. 3d 384 (U.S.5th Cir. 10/1/10).

### *Meeting of the Minds*

The Compromise Draft between the parties is only valid if the parties shared a meeting of the minds as to their intent. *See Am. Bank & Trust Co. v. Hannie,* 568 So.2d 216 (La.App. 3 Cir. 1990), *writ denied*, 572 So.2d 64 (La.1991). *See also Wortham v. Fielder,* 30-102 (La.App. 2 Cir. 4/8/98), 711 So.2d 399, *writ denied,* 98-1254 (La. 6/19/98), 721 So.2d 474; *Lemoine v. Thornton*, 13-889 (La.App. 3 Cir. 2/12/14) ____So.3d.___, *writ denied*, 14-541 (La. 4/25/14), 138 So.3d 648.

The e-mail negotiations between Mr. Stanford and Jeanne eventually resulted in a July 30, 2013 e-mail, wherein Mr. Stanford outlined a compromise offer from Brian. Mr. Stanford indicated that "the issue of the property settlement seems to be a non-issue, i.e. **Brian is agreeable**."

The main focus of the e-mail is the issue of spousal support, a discussion of which concluded with, "**Brian is willing to agree to $500 per month in spousal support, for a six month fixed period, running, say, from August. Any further spousal support, interim or fixed, to be thereafter waived.**"

Subsequently, on Friday, August 9, 2013 at 4:24 p.m., Mr. Stanford sent Jeanne an e-mail, and attached a "Compromise Draft" proposal. The August 9, 2013 e-mail reads as follows:

> Jeanne
>
> I've prepared a Draft settlement for you and Brian to execute. We'd like to arrange for you to come by and sign, as well as to-sign off on the cash sale (Brian indicates you have a copy in your possession that can be signed). Please advise as to when you might be available. Brian would like to move forward as quickly as possible.

D. Reardon Stanford

Jeanne responded at 4:44 p.m. on Friday, August 9, 2013 with, "Is it necessary that we are both there at the same time?  Jeanne Stelly"

Mr. Stanford responded at 4:55 on Friday, August 9, 2013:

No. In fact, as long as you can print it out (it's Drafted on legal size paper but that's not a huge issue), if you sign it in front of a notary and two witnesses (same for the cash sale deed which, I believe, is set up the same way), you can simply bring it to me executed, and I can get Brian to sign it after the fact. I have the August support payment for you in my possession.

D. Reardon Stanford

On Friday, August 9, 2013, at 5:12 p.m., Jeanne responded, "I don't have an issue going to your office to sign it, I just don't have a desire to be around him if [it's] not necessary.  I can be there as soon as it fits your schedule. Jeanne Stelly"

Nothing in these e-mails by Jeanne specifically contains any language that the proposal contained in the Compromise Draft was accepted by Jeanne.

On Monday of the following week, on August 12, 2013 at 8:32 a.m., Jeanne responded, "Reardon I apologize for the last minute notice but I need to reschedule for this morning. Jeanne Stelly"  Jeanne did not reschedule a time or date to sign the Compromise Draft, but in fact retained counsel shortly after receiving the Compromise Draft.

The various issues and general proposals discussed by Jeanne and Mr. Stanford during their e-mail negotiations, as summarized by counsel for Jeanne, included the following:

A. Assumption of all credit card debt from the marriage by Brian Stelly.

B. Waiver of interest in funds held in accounts during the marriage, including checking, savings and retirement.

C. Waiver of any and all interest in the property and contents located at 120 Windermere Circle.

D. Interim spousal support for six months with an amount to be determined, but based on his income, Defendant-Appellant requested $1,000.00- $1,500.00 per month.

E. Brian Stelly to pay all court costs.

The Compromise Draft sent on August 9, 2013, via email attachment, obviously included new provisions and details not previously mentioned in the e-mail exchanges and was never accepted by Jeanne. Instead, after considering the terms of the Compromise Draft, she canceled the scheduled appointment with Mr. Stanford and retained counsel. Jeanne's actions in retaining counsel reflect a decision that it was not in her best interest to accept the terms of the Compromise Draft and "put an end to the litigation." *Rivett*, 508 So.2d at 1359.

On September 19, 2013, Mr. Peter Piccione filed a reconventional demand on behalf of Jeanne, seeking both interim and permanent spousal support, and a detailed descriptive list in order to facilitate a division of the community assets. The reconventional demand clearly demonstrates that Jeanne did not intend to accept the language of the Compromise Draft with respect to either spousal support or the division of the community property.

In *Amy v. Schlumberger Technology Corp.*, 00-175, p. 5 (La.App. 3 Cir. 6/14/00), 771 So.2d 669, 672, a panel of this circuit found there was "no meeting of the minds" when, after the release was put in writing, "the plaintiff refused to accept the release language offered by Schlumberger." Although counsel had agreed in principle to the settlement, it was apparent that each party envisioned a different outcome as a result of the settlement when the agreement was reduced to

7

writing. *See also Soileau v. Allstate Ins. Co.*, 03-120 (La.App. 3 Cir. 10/15/03), 857 So.2d 1264, *writ denied*, 03-3170 (La. 2/6/04), 865 So.2d 724.

A comparison of the Compromise Draft with the e-mails between Mr. Stanford and Jeanne show that the Compromise Draft included numerous proposals that were not discussed or included in the e-mails, as outlined below in Jeanne's briefing to this court:

Section 3.  The payment of the $500.00 was contingent upon execution of the agreement. - **(NOT IN EMAIL.)**

Section 4.  A purchase of the immovable property by Brian Stelly with Jeanne Stelly agreeing to appear indicating that he is purchasing same with his separate funds and that thereafter it would be his separate property.- **(NOT IN EMAIL.)**

Section 5.  Discussion of vehicles- **(NOT ADDRESSED IN EMAIL)**

Section 6.  All financial depository or investment accounts currently open as opposed to the statement in the emails- funds being held in accounts during the marriage in possession of the parties.
Any and all right, title, interest and benefits pursuant to that certain 401 K retirement account and/or plan and/or assets contained therein in the name of Brian M. Stelly with Hewitt Associates. **(THIS WAS NOT ADDRESSED IN THE EMAILS, NOR WAS AN AMOUNT STATED AS TO THE VALUE)**

Section D.  Miscellaneous movable property concerning various jewelry in the respective parties' possession. **(ALL OF WHICH WAS NOT DISCUSSED OR ADDRESSED IN THE SUPPOSED COMPROMISE EMAILS.)**

Items 16-21. **WERE NOT DISCUSSED ANYWHERE IN ANY E MAIL CONCERNING REIMBURSEMENT CLAIMS AND/OR INDEMNIFICATION AND SUBROGATION RIGHTS.**

Item 22.  Brian Stelly was cast with court cost for the divorce, but excluded other matters other than the divorce which would obviously deal with spousal support and/or

8

community property. - **(THIS WAS ALSO NOT ADDRESSED IN ANY OF THE EMAILS.)**

Based on the record before us, we find there was an absence of a "meeting of the minds" between Brian, as represented by counsel and Jeanne, who was unrepresented at the time of the e-mail correspondence. Although there may have been an agreement in principal between the parties on some of the issues, the terms of the Compromise Draft clearly went beyond the terms discussed in the e-mails.

We find the evidence presented in support of Brian's exception of res judicata does not support his claim that Jeanne accepted the terms of the Compromise Draft, entitled "Stipulation And Settlement Agreement Regarding Spousal Support, Partition Of Community Property And Matters Incidental Thereto." As stated previously, no testimony was taken at the hearing, and the issue was decided solely on the basis of the e-mails and Compromise Draft submitted by Brian. Based upon our review of the evidence, we conclude that the trial court committed manifest error in finding that a valid compromise agreement was reached between the parties.

## DISPOSITION

For the foregoing reasons, the January 2, 2014 judgment of the trial court granting Brian M. Stelly's exception of res judicata is reversed, and the matter is remanded to the trial court for further proceedings consistent herewith. Costs of this appeal are assessed to Brian M. Stelly.

**REVERSED AND REMANDED.**

This opinion is **NOT DESIGNATED FOR PUBLICATION.** Uniform Rules—Courts of Appeal, Rule 2-16.3.