**In re RAYMARK INDUSTRIES, INC., Petitioner.**

**Wanda JENKINS, et al., Plaintiffs-Appellees,**

v.

**RAYMARK INDUSTRIES, INC., Defendant-Appellant.**

**Nos. 86–2498, 86–2499 and 86–2967.**

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1987.

Rehearing Denied Dec. 3, 1987.

See also, 5th Cir., 782 F.2d 468.

Before THORNBERRY, GARWOOD and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

We review the district court's construction of an unwritten settlement agreement. The agreement's terms were not reduced to a clearly stated document because the settlement was made during the trial of a large class action under a deadline imposed by a major defendant's threat of bankruptcy. We describe the negotiations leading to settlement before we explain our affirmance of the district court's interpretation.

I

In November, 1985, 753 asbestos-injury claims pending in the Eastern District of Texas were consolidated and certified as a class action by Judge Robert Parker. The

plaintiff class was represented by several attorneys, each responsible for a discrete subgroup containing anywhere from one to over 500 plaintiffs. Raymark Industries, Inc., was an asbestos manufacturer named as defendant in most but not all of the 753 claims. A set of manufacturers known collectively as the "Wellington Group" was also a defendant in the class action.

This appeal arises from a settlement agreement made between Raymark and the plaintiff-class in March, 1986, during a jury trial. Although settlement negotiations began well before trial, their progress accelerated when the attorneys for Raymark informed plaintiffs' counsel that Raymark would file for bankruptcy if settlement was not achieved immediately.

Raymark stated the terms of its "all or nothing" offer in a letter to Marlin Thompson, class counsel and attorney for 63 of the plaintiffs. The letter, which was slipped under the door of Thompson's hotel room on the night of March 17, said Raymark would file for bankruptcy unless the plaintiffs settled for $10,000 for each case in which Raymark was a party. The letter stated further that this offer required acceptance by 8:30 a.m. on March 18. Thompson replied at 9:15 the evening of the 17th, accepting "[o]n behalf of [his] clients which is thirty-six (36) of the class action cases."

The jury heard evidence the next morning, after which the judge met with the attorneys. Walter Umphrey, attorney for 534 of the class members, introduced the Thompson letter into evidence. He told the Court that he believed that Raymark sincerely intended to file under Chapter 11 if no settlement was reached. Jeffrey Lynch, Raymark's lawyer, then told the Court that Harry Day, an officer of Raymark, advised him that Raymark's Board of Directors had met and authorized a Chapter 11 filing in the event plaintiffs refused the offer.[1]

After Lynch's statement, Umphrey and Thompson moved that the court approve settlement for $10,000 per case as to *all* cases in which Raymark was a defendant, not just those brought by their own clients. This motion was consistent with Judge Parker's policy, stated at the inception of the class action, that he would not approve any piecemeal settlement, i.e., one involving both less than all defendants and less than all class members.[2] Umphrey's proposal would not have been a piecemeal settlement, since it would have resolved the claims of the entire class against Raymark.

Two plaintiffs' attorneys, Rex Houston (89 class members) and Scott Baldwin (46 class members), objected to Umphrey's motion. Judge Parker took the arguments under consideration. The next morning, March 19, the judge met again with the attorneys. Umphrey and Thompson renewed their motion that the Court approve settlement between Raymark and the class as a whole.

In addition, Umphrey informed the Court that during the night they had also reached a settlement agreement with the Wellington Group for approximately $68 million. As Umphrey described the terms of settlement with Wellington, the money was to be paid in a lump sum to the class. It would then be distributed to individual plaintiffs in amounts to be agreed upon later. This plan was consistent with a previous understanding between the Court and the parties that any settlement or judgment funds

**1.** The minutes of Raymark's Board of Directors meeting on the morning of March 18 reflected this decision. Day and Craig Smith, Raymark's President, told the Board that the pending litigation "threatened the precipitous and unanticipated exhaustion of available insurance." The minutes continued,
Mr. Smith and Mr. Day then presented management's conclusion that it would be in the best interests of the Corporation to seek relief under Chapter 11 of the Federal Bankruptcy Code unless the Texas litigation could

be settled for an amount not exceeding $10,000 per case, or a total of $7.4 million. Mr. Smith stated that allowing the litigation to proceed to verdict, or settling for an amount significantly greater than $7.4 million, would in all likelihood lead to the filing of Chapter 11 petition in any event.

**2.** In a class action the district court has the power to approve any settlement. *See* Fed.R. Civ.P. 23(c).

would be distributed to each class member only after class-wide issues had been resolved and in an amount relative to his or her individual claim. Indeed, the settlements made by other defendants up to this point had been figured on a lump-sum basis.

Houston renewed his objection to the terms of the Raymark settlement, angry that Raymark was using the threat of bankruptcy to coerce an inadequate settlement. After hearing this objection, the court retired to chambers for further discussion with counsel.

Back on the record a short time later, Umphrey suddenly changed the terms of his motion: he now wanted to sever out Raymark and settle only with the Wellington defendants. In other words, Umphrey now wanted to proceed to trial against Raymark. In response, the court reminded Umphrey that it would not approve such a settlement because it included less than all defendants and less than the entire class.

At this point Houston, who had opposed the original version of Umphrey's motion, objected. He argued that a settlement would be workable only if it included all defendants. Thus, he moved that the court approve the settlement in its prior form, i.e., including Wellington *and* Raymark.

In the ensuing discussion Michael Schwartz, another Raymark attorney, made the following statement, which has become a focal point of this appeal:

Judge, the only comment that I have is to reiterate the comments that we have made in private sessions with the Court, and basically I think the Court is well aware that the bankruptcy proceeding of Raymark is imminent. There is 7.2 million dollars available to compensate injured plaintiffs that are members of this class that is available today and will not be available tomorrow.

After a recess, the court ruled, approving a settlement between the entire class and both Raymark and Wellington. The court did not specify the terms of the settlement it was approving, nor did the parties seek such clarification at that time. Trial continued as to the claims against those defendants not included in the settlement.

A few days later Raymark deposited $7.3 million with the registry of the court. This payment was accompanied by a letter identifying it as $10,000 per-case for the 730 cases in which Raymark was named defendant. The letter also said Raymark reserved the right to a refund if fewer than 730 cases existed.

In fact, as the case progressed the parties determined that Raymark was actually named in only 654 cases. On June 19, Raymark moved to withdraw from the court's registry $760,000, or the difference between what Raymark paid ($7.3 million) and what its payment should have been for 654 cases at $10,000 per case ($6,540,000).

After reviewing the record, Judge Parker said he had perceived Raymark's proposal to be payment of a lump-sum, $7.2 million. The judge gave several reasons for his belief. First, he had no reason to expect Raymark would deviate from the unbroken trend of lump-sum settlements by the other defendants in the case. Hence, he took Schwartz's use of the lump-sum figure to be an offer of settlement at a fixed, class-wide price.

Judge Parker also believed that a per-case settlement offer would have been odd given the administrative context of the case. The parties understood from the outset that a class-wide judgment or settlement would be achieved first, and then class members would receive a share based on the merits of their individual claims. Indeed, the pooling of defendants' payments would probably have meant that settlement money from Raymark might go to plaintiffs who had never even named Raymark as a defendant. Hence, Judge Parker concluded that it would have been strange for Raymark to calibrate its settlement offer on a per-case basis.

On June 24, the court entered a formal order denying Raymark's motion for a refund, holding that Schwartz's statement was an offer of settlement at $7.2 million. The judge did, however, order the refund of $100,000, the amount by which Raymark's payment exceeded Schwartz's offer. The rest of the money still resides in the court's registry.

On October 14, the court denied a motion by plaintiffs to vacate and set aside the court's order approving settlement, finding that the settlement "was appropriate and in the best interests of the members of the class."

On November 5, Judge Parker certified the question for appeal under 28 U.S.C. § 1292(b).[3]

## II

■ Although interpretation of an unambiguous contract is a question of law, clear error is the standard of review when a district court uses extrinsic evidence to interpret an ambiguous contract. *Paragon Resources, Inc. v. Natural Fuel Gas Distr. Corp.*, 695 F.2d 991, 995 (5th Cir.1983); *Western Beef, Inc. v. Compton Investment Co.*, 611 F.2d 587, 590 (5th Cir.1980). Because a settlement agreement is a contract, we apply this level of review here.[4] *See White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir.1986). Hence, we are free to reverse only if after examining the entire record we are left with "a definite and firm conviction" that the district court's reading of the settlement agreement was mistaken. *Dresser Indus. v. Fidelity & Casualty Co.*, 580 F.2d 806, 807 (5th Cir.1978).

■ We find no clear error. To begin with, we believe that Judge Parker reasonably interpreted Schwartz's statement, given the context in which it was made, to be an offer to settle for the lump sum of $7.2 million. All the other defendants had used lump-sum settlement figures, and the plan for ultimate distribution made the number of plaintiffs irrelevant.

A per-case offer also seems inconsistent with the major circumstance motivating the settlement: Raymark's impending bankruptcy. If Raymark was facing bankruptcy on March 17, its directors would have viewed the impact of the asbestos litigation in terms of lump-sum figures. After all, any financial shortfall resulting from the lawsuit would be felt as an aggregate loss; the per-case cost to Raymark would be irrelevant. Indeed, the minutes of Raymark's Board of Directors meeting emphasized that $7.4 million was the most Raymark could afford to lose. The court and the class representatives thus could rely on Raymark's representations of insolvency and reasonably infer that per-case settlement numbers were not important.

We acknowledge that there is evidence in the record to support a contrary interpretation; we might well reach a contrary conclusion if we were deciding the issue afresh. At the least we must confess that this is a close case. In particular, the repeated references to a $10,000 per-case figure support Raymark's position. These facts might go a long way in proving that Raymark never intended to settle for more than $10,000 per case. But the crucial question is whether Raymark's actions, as seen by a reasonable observer, could be taken to be a lump-sum offer. We cannot say that Judge Parker's conclusion, made from his vantage point at the center of these pressure-packed negotiations, was clearly wrong. Ultimately, we tilt in favor of this conclusion because we are reluctant to overturn a trial judge's decision made as

---

3. Raymark also filed a petition for writs of mandamus and prohibition pursuant to 28 U.S.C. § 1651(a). However, because we have jurisdiction over the case as a certified interlocutory appeal, we do not consider this petition.

4. We note that the parties do not take issue with the *existence* of a settlement contract, but dispute only the contract's terms. The Appellees only attack the agreement's validity as an alternative to their argument for affirmance. Although there might be reason to doubt that the attorneys for the class ever formally accepted Raymark's $7.2 million offer, we have no such allegation before us.

this was in the middle of a major trial before a jury, particularly when the lack of opportunity for a more deliberative approach was much the creature of the party now complaining.

AFFIRMED.