United States Court of Appeals,
Fifth Circuit.
No. 92–4463
Summary Calendar.

Anthony G. GUIDRY, Plaintiff–Appellant,

v.

HALLIBURTON GEOPHYSICAL SERVICES, INC., Edison Chouest Offshore, Inc., and Galliano Marine Services, Defendants–Appellees.

Nov. 6, 1992.

Appeal from the United States District Court for the Eastern District of Texas.

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Anthony G. Guidry appeals from the district court's order enforcing the settlement reached by Guidry and defendants Halliburton Geophysical Services, Inc., Edison Chouest Offshore, Inc., and Galliano Marine Services. Guidry contends that the district court erred in finding that the settlement agreement precluded any future claim for maintenance. We affirm.

I.

Anthony Guidry became ill in the course of performing his duties on the R/V Sea Star during the summer of 1990. Guidry's illness was diagnosed as pneumonia and he remained in England for treatment. Upon returning to the United States, Guidry's physicians found that his pneumonia had been cured. Guidry later developed osteomyelitis, however, which his doctor attributed to the pneumonia. On July 3, 1991, Guidry brought suit in United States District Court for the Eastern District of Texas against Galliano Marine Service, his employer, Edison Chouest Offshore, Inc., owner of the vessel, and Halliburton Geophysical Services, Inc., charterer of the vessel. Guidry sought personal injury damages as well as maintenance and cure under the Jones Act and general maritime law.

The case went to trial on February 5, 1992. At the close of Guidry's case, Judge Parker urged settlement. During a meeting in chambers, the parties reached an agreement in the presence of Judge

Parker. This discussion was not recorded. Guidry's counsel announced the terms of the settlement in open court on February 6. Counsel indicated that the parties had settled the seaworthiness claims, with the defendants agreeing to pay Guidry $125,000. Guidry's counsel then spoke of the claims reserved under the agreement. He first stated that the "settlement does not in any manner affect the Plaintiff's rights under the general maritime law for maintenance and cure. His claim for maintenance and cure is totally unaffected by this settlement." The following exchange then took place:

> [Guidry's counsel]: And it is Plaintiff's understanding that it is the opinion of counsel for the Defendant that insofar as this man's osteomyelitis of the chest area, that this—that future payments will be paid either under the provisions—paid in accordance with—or paid under the obligation of maintenance and cure—under the cure obligation or paid by the hospitalization insurance.

> The Court: As I understand it there is some question about whether payment to date have been covered by hospitalization policy which may or may not remain in effect.

> [Defense Counsel]: That is true, Your Honor.

> The Court: Is that right?

> [Defense Counsel]: That is true.

> The Court: Because plaintiff is no longer an employee, and there may be a question depending on the provisions of the policy, whether they continue to cover him. If they do not continue to cover him, then his claim for cure for the osteomyelitis is unaffected by the settlement, is that a fair statement?

> [Defense Counsel]: That is a fair statement, Your Honor.

> The Court: All right.

The district court dismissed the case without prejudice by reason of settlement on February 10, retaining jurisdiction to reopen the action upon a showing that the settlement had not been completed.

Guidry received funds and closing papers from defendants on March 10. The release reserved only Guidry's claim for cure. Guidry questioned the release's failure to reserve future claims for maintenance and filed a motion to enforce the settlement on March 27. After a conference among the district court and counsel (also unrecorded), the court found that the settlement reserved Guidry's cure claim but precluded any future claim for maintenance. The court ordered the settlement to be enforced in accord with this finding. Guidry has appealed to this court.

II.

The parties disagree on the appropriate standard of review. Guidry contends that the district court's interpretation of the settlement agreement should be reviewed *de novo.* The defendants argue that we may reverse only if we find that the district court's reading is clearly erroneous. We agree with defendants that the oral settlement's ambiguity makes clear error review proper.

A settlement agreement is contract. *In re Raymark Indus., Inc.,* 831 F.2d 550, 553 (5th Cir.1987). A district court's interpretation of an unambiguous contract is a question of law, subject to *de novo* review. *LTV Educ. Systems, Inc. v. Bell,* 862 F.2d 1168, 1172 (5th Cir.1989); *Raymark,* 831 F.2d at 553. This standard applies to all unambiguous contracts, oral as well as written. *FDIC v. Mmahat,* 960 F.2d 1325, 1328 (5th Cir.1992). Where an agreement is ambiguous, such that its construction turns on a consideration of extrinsic evidence, the district court's interpretation is reviewed for clear error. *National Union Fire Ins. Co. v. Circle, Inc.,* 915 F.2d 986, 989 (5th Cir.1990); *Raymark,* 831 F.2d at 553. The initial determination that the ambiguous nature of a contract warrants the introduction of extrinsic evidence is itself a question of law. *Circle,* 915 F.2d at 989.

The district court apparently found the oral settlement ambiguous and relied on extrinsic evidence to determine that future claims for maintenance were precluded. Guidry contends that the oral settlement unambiguously reserves his claim for maintenance as well as cure. We disagree. It is true that the oral settlement contains one statement that clearly reserves both claims. *See* R. 2, p. 62 ("This settlement does not in any manner affect the Plaintiff's rights under the general maritime law for maintenance and cure. His claim for maintenance and cure is totally unaffected by this settlement."). But such a provision cannot be considered apart from the rest of the agreement. *See, e.g., In re Continental Airlines Corp.,* 907 F.2d 1500, 1511 (5th Cir.1990) ("When interpreting a settlement agreement a court should not read individual sections out of context to achieve a result not originally contemplated by the parties"). Rather, the statement reserving both claims must be read together with the exchange between Judge Parker and counsel that immediately followed. Viewed in this manner, the meaning of the settlement agreement is by no means clear.

After stating that the settlement reserved claims for both maintenance and cure, Guidry's

counsel announced that the parties had agreed that treatment for Guidry's osteomyelitis would be covered by "the cure obligation or paid by the hospitalization insurance." Judge Parker at this time attempted to clarify this point in the agreement by offering what he believed to be a "fair statement" of the matter: "If [the insurance policy provisions] do not continue to cover him, then his claim for cure of the osteomyelitis is unaffected by the settlement." This explanation received the assent of defense counsel and the discussion concluded.

Defendants maintain that Judge Parker's comment either renders the oral settlement ambiguous or establishes that the agreement reserves only the claim for cure. According to defendants, the assertion that Guidry's "claim for cure ... is unaffected by the settlement" indicates that his claim for maintenance *is* affected, that is, precluded, by the settlement. Judge Parker's comment in their view constitutes a correction of Guidry's counsel's mistaken prior statement reserving both claims. But it is also possible to read Judge Parker's statement in a way that does not contradict counsel's prior reservation of claims for maintenance and cure. Since Judge Parker's comment immediately followed a statement in which cure was the only claim mentioned, his omission of the maintenance claim might not bear the freight defendants suggest. One could contend that Judge Parker was not correcting counsel's prior misstatement, but was merely responding to the particular issue raised by counsel in the preceding statement. Moreover, one might argue that if Guidry's counsel's assertion that the settlement reserved both maintenance and cure was a total misstatement of the agreed-upon terms, as defendants now claim, surely defense counsel or the court would have corrected this error in a more direct manner. These two plausible interpretations of the transcript lead us to conclude that the oral settlement agreement is ambiguous. It was therefore appropriate for the district court to use extrinsic evidence as an aid in determining the intent of the parties.

Defendants stress the presence and participation of Judge Parker during settlement negotiations in contending that his reading of the agreement should not be disturbed. We agree. Where the interpretation of a settlement agreement turns on an evaluation of extrinsic evidence, a district court's findings deserve great deference. This is especially true in cases where the court has been intimately involved in the process. *See, e.g., Raymark,* 831 F.2d at 553.

AFFIRMED.