SOUTHERN SNOW
MANUFACTURING CO., INC.

v.

SNOWIZARD HOLDINGS, INC., et al.

Civil Action Nos. 06–9170, 09–
3394, 10–0791, 11–1499.

United States District Court,
E.D. Louisiana.

Signed Feb. 16, 2013.

.

Mark EDW. Andrews, Andrews Arts & Sciences Law, LLC, Earl J. Schmitt, Jr., New Orleans, LA, for Plaintiff.

Jack Edward Morris, Kenneth L. Tolar, Metairie, LA, Brad Elliot Harrigan, Simeon B. Reimonenq, Jr., Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, for Defendants.

## ORDER AND REASONS

NANNETTE JOLIVETTE BROWN, District Judge.

Before the Court is the Motion for Summary Judgment[1] filed by Hanover Insurance Company ("Hanover"). Therein, Hanover requests that summary judgment be entered in its favor upon a finding that Hanover no longer owes SnoWizard, Inc. ("SnoWizard") a defense. This Court previously granted the motion in part, but ordered supplemental briefing on the applicability of the Settlement Agreement between the parties to Hanover's duty to defend.[2] Having considered the motion, the supplemental briefing and responses from each party, the record, and the applicable law, the Court will deny the motion.

### I. Background[3]

Southern Snow Manufacturing Co., Inc., Simeon, Inc., Parasol Flavors, LLC, among other plaintiffs, (collectively, "Plaintiffs") and SnoWizard, Inc. are engaged in extensive litigation in the United States District Court for the Eastern District of Louisiana that extends further than the suits involved in the instant motion, namely Civil Actions Nos. 06–9170, 09–3394, and 10–0791 (hereinafter, the "Consolidated Suits").[4] Plaintiffs and SnoWizard are competitors in the business of manufactur-

1. Rec. Doc. 581.

2. See Rec. Doc. 622.

3. The procedural and factual background of this case, particularly as it relates to the instant motion, was set forth in detail in the Court's preceding Order and Reasons. See Rec. Doc. 622. Therefore, the Court will only reiterate the facts applicable to the issue before it.

4. The instant motion involves reconsideration of orders entered in Civil Actions Nos. 06–9170, 09–3394, and 10–0791. The foregoing cases have all been consolidated with Civil Action No. 11–1499.

ing and selling snowball ice-shaving machines and snowball flavor concentrates. Plaintiffs filed suit against SnoWizard for, *inter alia*, trademark infringement, false assertion of trademark rights, and for disparaging Plaintiffs' businesses concerning certain flavor names.[5] Civil Action No. 06–9170 was originally assigned to Judge Jay C. Zainey, Section "A." Civil Actions Nos. 09–3394 and 10–0791 were originally assigned to Judge Mary Ann Vial Lemmon, Section "S," but those matters were subsequently transferred to Judge Zainey and consolidated with Civil Action No. 06–9170.[6] On October 7, 2011, consolidated matter No. 06–9170 was reassigned to this Section, Section "G," as part of a new docket for a newly appointed judge.

SnoWizard approached Hanover, its commercial liability insurer under policy ZHO 9287162 (hereinafter, the "policy"), to provide it with a legal defense in this case. Upon considering the allegations of Plaintiffs' complaint, Hanover concluded that the policy provisions of its contract with SnoWizard did not compel it to defend SnoWizard in this case. SnoWizard responded by filing a third-party complaint against Hanover seeking declaratory judgment, claiming breach of contract, and claiming bad faith insurance claims adjusting under Louisiana insurance and contract law on May 3, 2007.[7]

In late 2007, Hanover and SnoWizard filed cross motions for summary judgment on the issue of coverage under the policy in Civil Action No. 06–9170. Judge Zainey ruled against Hanover, reasoning that the term "disparages" was broad enough to leave open the possibility that a cease and desist letter, allegedly containing a false accusation of trademark infringement, could trigger liability under the policy.[8] Hanover moved for reconsideration, but the Court administratively closed the case until the cancellation proceedings before the United States Patent & Trademark Office ("USPTO") were resolved.

Once Civil Action No. 06–9170 was reopened, Civil Actions Nos. 09–3394 and 10–0971 were transferred and consolidated with No. 06–9170. On October 25, 2010, SnoWizard and Hanover settled the third-party claims, with Hanover reserving "all coverage defenses which have been asserted or may hereafter be asserted against any of the parties to the Consolidated Suits."[9] The Settlement Agreement bound Hanover "to defend SnoWizard in the Consolidated Suits subject to Hanover's three July 12, 2010, *Reservation of Rights* letters to SnoWizard concerning SnoWizard's tender of defense and indemnification in the Consolidated Suits ... and subject to Hanover's stipulations and affirmative defenses set forth by Hanover in its response to the Third–Party Complaint."[10]

On February 23, 2011, March 8, 2011, and March 9, 2011, Hanover filed motions for summary judgment in Civil Actions Nos. 06–9170, 09–3394, and 10–0791, re-

---

**5.** *See* Rec. Docs. 1, 113, 167.

**6.** Civil Action Nos. 11–0880 and 11–1499 were also subsequently consolidated with Civil Action No. 06–9170. Civil Action Nos. 11–0880 was later removed from the consolidated matter and stayed.

**7.** Rec..Doc. 43.

**8.** Order & Reasons issued January 2, 2008, Rec. Doc. 87 at pp. 5–6. The policy defense

"personal and advertising injury" in pertinent part as any "oral or written material ... that slanders or libels a person or organization or disparages a persons's or organization's good, products, or services." Rec. Doc. 87 at p. 5.

**9.** Rec. Doc. 190.

**10.** Rec. Doc. 591–2 at p. 2.

spectively.[11] In each of these motions, Hanover argued that the undisputed facts unearthed by discovery demonstrate that the policy does not provide coverage for the claims asserted, and that Hanover therefore has no indemnity obligations nor any further duty to provide a defense for SnoWizard.[12] Judge Zainey granted Hanover's motions as they pertained to indemnity in each case, holding that the policy did not afford coverage for the asserted claims, but he denied Hanover's motions insofar as Hanover sought to prospectively terminate its defense obligations.[13] Hanover filed a Motion for Reconsideration [14] in each of the Consolidated Suits,[15] which Judge Zainey denied on June 27, 2011.

On November 7, 2012, Hanover filed the instant Motion for Summary Judgment [16] in the Consolidated Suits, wherein Hanover requests that the Court reconsider Judge Zainey's orders partially denying summary judgment on the basis of Hanover's continuing duty to defend even after the Court determined that SnoWizard had no coverage for the asserted claims under the policy.[17] This Court previously granted the motion for summary judgment, in part, finding that Judge Zainey was clearly erroneous in concluding that Hanover had a continuing duty to defend implicit in Louisiana law, and the Court held that the duty to defend terminated upon the judi-

cial determination that the undisputed facts excluded coverage.[18] However, for the first time, in opposition to the motion for summary judgment, SnoWizard argued that the Settlement Agreement entered into by the parties on October 25, 2010 obligates Hanover to continue furnishing a defense—an argument that was never advanced before Judge Zainey in the motions for summary judgment filed in 2011. Therefore, the Court ordered supplemental briefing on "the issue of whether the parties intended the Settlement Agreement and Reservation of Rights letter to require Hanover to continue its defense of SnoWizard if a determination that coverage is excluded was made prior to trial." [19] On February 5, 2013, the parties formally entered a stipulation into the record that "any issue of fact involving Hanover's duty to defend SnoWizard will be tried to and decided by the court, not the jury." [20] SnoWizard filed supplemental briefing on February 6, 2013,[21] and Hanover filed its supplemental memorandum on February 7, 2013.[22] Hanover and SnoWizard filed responses on February 8, 2013,[23] in accordance with the Court's order.

## II. The Parties' Arguments

### A. Interpretation of the Settlement Agreement

SnoWizard argues that the motion for summary judgment should be denied and

---

11. Rec. Docs. 266, 272, 273.

12. Rec. Doc. 266–3 at p. 2; Rec. Doc. 272–2 at pp. 1–2; Rec. Doc. 273–2 at pp. 1–2, 3.

13. Rec. Docs. 342, 343, 346 at p. 5.

14. Rec. Docs. 357–359. Hanover styled each motion as a "Motion for Reconsideration, Alternatively, Motion for Certification for Interlocutory Appeal and for Stay of Proceedings." Id.

15. Id.

16. Rec. Doc. 581.

17. Rec. Docs. 342, 343, 346 at p. 5.

18. Rec. Doc. 622.

19. Id. at p. 38.

20. Rec. Doc. 628.

21. Rec. Doc. 632.

22. Rec. Doc. 633.

23. Hanover's Response, Rec. Doc. 634; SnoWizard's Response, Rec. Doc. 635.

Hanover should be required to continue to furnish a defense, because nothing in the Settlement Agreement or Reservation of Rights letters entitles Hanover to terminate its defense. SnoWizard explains that if the Settlement Agreement is unambiguous, Louisiana Civil Code article 2046 provides that "it must be enforced as written, and 'no further interpretation may be made in search of the parties' intent.'"[24] SnoWizard avers that the Settlement Agreement is not ambiguous regarding "Hanover's express 'agreement to defend SnoWizard in the Consolidated Suits,'" and therefore, it must be enforced as written.[25] SnoWizard explains that, in the Settlement Agreement, it "released its claims against Hanover for bad faith claims adjusting pursuant to La. R.S. 22:658 and La. R.S. 22:1220 expressly, clearly, and unambiguously 'in consideration of Hanover's agreement to defend SnoWizard in the Consolidated Suits.'"[26] SnoWizard contends that the Settlement Agreement is not rendered ambiguous by the fact "that the express agreement to defend SnoWizard in the Consolidated Suits is 'subject to Hanover's three July 12, 2010, *Reservation of Rights* letters.'"[27] According to SnoWizard, the rights reserved by Hanover are "clearly, unambiguously, and emphatically expressed in those letters," and all the rights reserved "relate to Hanover's 'position on coverage in this matter,' not 'its undertaking to defend SnoWizard.'"[28] SnoWizard argues that its interpretation of the rights Hanover reserved is but-

tressed by Judge Zainey's order of partial dismissal, which reserved unto Hanover only "coverage defenses."[29] SnoWizard concludes that "while Hanover reserved its right to deny coverage based on policy defenses, it did not reserve any 'separate and distinct' right to deny or terminate its defense of SnoWizard."[30]

In contrast, Hanover reasons that if the "intent of the Settlement Agreement [had] been that Hanover was precluded from withdrawing its defense of SnoWizard, that intent would have been expressed."[31] Instead, according to Hanover, the Settlement Agreement provided that the defense of SnoWizard was "(1) 'subject to Hanover's three July 12, 2010, *Reservation of Rights* letters to SnoWizard concerning SnoWizard's tender of defense ... in the Consolidated Suits' and (2) 'subject to Hanover's stipulations and affirmative defense set forth by Hanover in its response to the Third Party Complaint.'"[32] Hanover argues that the Settlement Agreement and Reservation of Rights letters should be interpreted to mean that:

> Hanover had agreed to defend SnoWizard going forward, but reserved its right to alter its position on coverage "should additional information come to light, should circumstances change" and in return for $20,000, SnoWizard released Hanover from bad faith claims and defense costs incurred before July 10, 2010, but reserved its rights to seek

---

**24.** Rec. Doc. 632 at p. 4.

**25.** *Id.*

**26.** *Id.* at p. 2 (quoting Rec. Doc. 632–1 at p. 2).

**27.** *Id.* at p. 3.

**28.** *Id.* (quoting Rec. Doc. 632–1 at pp. 20, 40).

**29.** *Id.*

**30.** *Id.* at p. 4. (quoting *Martco Ltd. P'ship v. Wellons, Inc.,* 588 F.3d 864, 872 (5th Cir. 2009)).

**31.** Rec. Doc. 634 at p. 1.

**32.** *Id.* at pp. 1–2 (quoting Rec. Doc. 632–1 at p. 2).

indemnity under the policy.[33] Hanover concludes that "[t]here would be no need to incorporate [the Reservation of Rights] letters with this language had the intent of the Agreement been to lock Hanover into a duty to defend forever."[34] Similarly, Hanover explains that the answer to the third party complaint, which was never withdrawn, sets out Hanover's defense and assertions that it had no duty to defend, and it would have been unnecessary to reference this answer in the Settlement Agreement if the parties' intent had been to preclude Hanover from seeking to terminate the defense.[35] Moreover, Hanover explains that SnoWizard "was certainly agreeing to Hanover's reservation of rights" by "demanding a defense, and then in accepting a defense under a reservation of rights."[36]

In response, SnoWizard notes that Hanover's supplemental memorandum emphasizes that it "reserved all *coverage* defenses which have been asserted" and "reserved its right to alter its position on *coverage* should additional information come to light, should circumstances change."[37] SnoWizard reiterates that it does not take the position that Hanover gave up coverage defenses, but it contends that Hanover "gave up any 'separate and distinct' defenses" to its duty to defend SnoWizard.[38] SnoWizard further notes that Louisiana Civil Code article 3076 provides that "[a] compromise settles only those differences that the parties clearly intended settle, *including the necessary consequences of what they express*."[39] SnoWizard reasons that once Hanover unambiguously agreed to defend SnoWizard in the Settlement Agreement, Hanover was precluded from terminating that defense, because it was a necessary consequence of the Settlement Agreement.[40]

### B. Intent of the Parties

SnoWizard argues that the parties "necessarily intended the settlement documents to require Hanover to continue its defense of SnoWizard through trial and appeal regardless of the outcome of the suit or the eventual determination of actual coverage."[41] If such a result was not intended, SnoWizard explains that "there would have been no reason for SnoWizard to release its claims against Hanover 'for all extra contractual claims and demands ... arising from or related to Hanover's handling of SnoWizard's demand for defense against any or all of the Consolidated Suits."[42] According to SnoWizard, if the parties intended the Settlement Agreement to permit Hanover to terminate its defense, it would have said so.[43] In support of this proposition, SnoWizard notes that in another matter, Civil Action No. 11–515, "SnoWizard and Hanover entered a settlement agreement in which SnoWizard expressly released Hanover from its duties 'to defend and indemnify SnoWizard

---

**33.** Rec. Doc. 633 at p. 3.

**34.** Rec. Doc. 634 at p. 2.

**35.** *Id.*

**36.** Rec. Doc. 633 at p. 4.

**37.** Rec. Doc. 635 at p. 2 (quoting Rec. Doc. 633 at p. 3) (internal quotations omitted).

**38.** *Id.*

**39.** *Id.* at p. 3 (internal quotations omitted).

**40.** *Id.* (citing *United Fire & Cas. Co. v. Hixson Bros., Inc.,* 453 F.3d 283, 285 (5th Cir.2006); *Jensen v. Snellings,* 841 F.2d 600, 612 (5th Cir.1988)).

**41.** Rec. Doc. 632 at p. 2.

**42.** *Id.* (citing Rec. Doc. 632–1 at p. 2).

**43.** *Id.* at p. 4.

in the Robinson suit;' " [44] whereas, in this case, SnoWizard released only its "extra contractual claims and demands" against Hanover related to Hanover's handling of SnoWizard's demand for defense.[45] SnoWizard explains that the consideration for the release of its claims against Hanover was Hanover's express agreement to defend, and but for that consideration it would not have release its claims. According to SnoWizard, the consideration of $20,000 that SnoWizard received from Hanover could not have been in exchange for the release, because the correspondence leading up to the settlement indicates that the cash consideration was paid solely to reimburse SnoWizard for a small portion of the defense costs incurred prior to settlement.[46] Thus, SnoWizard concludes that:

> even if the Court were to find the Settlement Agreement ambiguous and resort to extrinsic evidence to interpret it, "the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties" confirms that the parties necessarily intended Hanover to continue its defense of SnoWizard through trial and appeal "regardless of the outcome of the suit or the eventual determination of actual coverage." [47]

Moreover, SnoWizard maintains that the settlement discussions demonstrate that Hanover furnished the text of the Settlement Agreement and Reservation of Rights letters, so any remaining doubt about the meaning of a contractual provision must be interpreted against Hanover, "the party who furnished its text." [48]

In contrast, Hanover argues that the parties' intent with respect to the Settlement Agreement is best evidenced by the parties' actions after signing the Settlement Agreement. In particular, Hanover argues that it would not have filed multiple motions seeking to terminate its defense nor would SnoWizard have relied primarily on the language of the policy instead of the Settlement Agreement to prevent Hanover from terminating its defense if the parties had understood the Settlement Agreement to preclude Hanover from terminating its defense.[49] Hanover avers that its position is now, and always has been, that "the Court's ruling on indemnity coverage, when considered in light of the jurisprudence concerning termination of an insurer's duty to defend, will relieve Hanover of its contractual defense obligations to SnoWizard in this suit." [50] Finally, Hanover disagrees with SnoWizard's contention that the $20,000 of cash consideration demonstrates that the parties intended the Settlement Agreement to preclude Hanover from terminating its defense. Hanover reasons that the claim was weak because the duty to defend did not arise until Southern Snow filed its Second Amended Complaint in 2010, at which time the vague allegation of "disparagement" required Hanover to defend and Hanover engaged counsel in July of 2010.[51] Therefore, the $20,000 cash consideration was "fair con-

44. *Id.* at p. 5 (quoting Rec. Doc. 632–2 at p. 1).

45. *Id.*

46. *Id.*

47. *Id.* at pp. 5–6 (quoting *Jensen,* 841 F.2d at 612).

48. Rec. Doc. 632 at p. 6 (quoting La. Civ. Code art. 2056).

49. *Id.* at pp. 2–3.

50. Rec. Doc. 634 at p. 4.

51. *Id.* at p. 5.

sideration for dropping "a weak 'bad faith' claim." [52]

## C. Prejudice to SnoWizard from Termination of the Defense

SnoWizard maintains that even if the Court finds that the Settlement Agreement does not require Hanover to furnish a defense, SnoWizard maintains that Hanover nonetheless owes it fiduciary duties of good faith and fair dealing as the insurer.[53] According to SnoWizard, the Louisiana Supreme Court observed in *Pareti v. Sentry Indemnity Co.*[54] that:

> there may be a point in ongoing litigation at which the insurance company's withdrawal from the defense of the insured would be so prejudicial to the insured's interests that it would constitute a breach of the company's duty to act as a fiduciary toward the insured and to discharge its policy obligations in good faith.[55]

At this point in the litigation, SnoWizard reasons that its "principal defense attorneys ... will be forced to withdraw from the lawsuit immediately, leaving SnoWizard's remaining counsel only a matter of days or hours to assume and undertake the entire defense of SnoWizard at trial." [56] SnoWizard emphasizes that this would be so prejudicial to its interests as to constitute a breach of Hanover's fiduciary duties.[57]

In response, Hanover asserts that "most of the claims against SnoWizard have been whittled away by partial summary judgment motions funded in part by Hanover under counsel supplied under its reservations of rights." [58] Hanover explains that primarily SnoWizard's counterclaims remain, in which SnoWizard is effectively the plaintiff, and Hanover contends that it "should no longer have to prosecute SnoWizard's affirmative claims." [59] Moreover, Hanover reasons that SnoWizard will continue to have able counsel to press the counterclaims and defend any remaining uncovered claims.[60]

## III. Law and Analysis

### A. Standard Applicable to a Motion for Summary Judgment

 Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [61] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." [62] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary

---

52. *Id.* at p. 5.

53. Rec. Doc. 632 at p. 6.

54. 536 So.2d 417, 423 n. 9 (La.1988).

55. Rec. Doc. 632 at p. 6.

56. Rec. Doc. 635 at p. 4.

57. *Id.*

58. Rec. Doc. 634 at p. 5.

59. *Id.* at p. 5.

60. *Id.*

61. Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

62. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398–99 (5th Cir.2008).

judgment." [63] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[64]

Because the parties have entered a stipulation,[65] this issue, which effectively resolves this matter between Hanover and SnoWizard, will be decided by the judge. In a non-jury case such as this one, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." [66] "When deciding a motion for summary judgment prior to a bench trial, the district court 'has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result.'" [67] Therefore, the Court may draw inferences from the evidence before it in deciding the motion for summary judgment.[68]

## B. Law Applicable to Interpretation of the Settlement Agreement

Under both Louisiana law [69] and federal law, an agreement between the parties settling a disputed liability is "as conclusive of their rights as a judgment would be." [70] A settlement agreement is a contract.[71] A district court's interpretation of an unambiguous contract is a question of law, subject to *de novo* review,[72] but where an agreement is ambiguous, such that its construction turns on consideration of extrinsic evidence, the district court's interpretation is reviewed for clear error.[73] However, the initial determination that the ambiguous nature of a contract warrants the introduction of extrinsic evidence is itself a question of law.[74]

63. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985); *Little*, 37 F.3d at 1075.

64. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

65. Rec. Doc. 628.

66. *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir.2010) (citing *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991)).

67. *Id.* (quoting *In re Placid Oil Co.*, 932 F.2d at 398).

68. *See id.* ("The district court, as the trier of fact, was permitted to draw inference from this evidence to conclude that Johnson failed to present sufficient evidence of 'reporting' a violation of law.").

69. The Court finds that Louisiana law is applicable to interpretation of this settlement agreement. *See Davis v. Huskipower Outdoor Equipment Corp.*, 936 F.2d 193, 196 (5th Cir. 1991) (enforceability of settlement agreement is governed by the law of the forum state).

70. *Noble Drilling, Inc. v. Davis*, 64 F.3d 191, 195 (5th Cir.1995); *Holloway Drilling Equip., Inc. v. Bodin*, 2012–355 (La.App. 3 Cir. 11/7/12), 107 So.3d 699, 703 (applying the doctrine of *res judicata* where there is a transaction or settlement of a dispute that has been entered into by the parties). *See also Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir.1967) ("Federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced.") (footnotes and citations omitted).

71. *In re Raymark Indus., Inc.*, 831 F.2d 550, 553 (5th Cir.1987). *See also* La. Civ.Code. art. 3071 ("A compromise is a contract.").

72. *Guidry v. Halliburton Geophysical Services, Inc.*, 976 F.2d 938, 940 (5th Cir.1992) (citing *LTV Educ. Systems, Inc. v. Bell*, 862 F.2d 1168, 1172 (5th Cir.1989); *Raymark*, 831 F.2d at 553).

73. *Id.* (citing *Nat'l Union Fire Ins. Co. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir.1990)).

74. *Id.* (citing *Nat'l Union Fire Ins. Co.*, 915 F.2d at 989).

Under Louisiana law, the scope of a settlement agreement "settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express," [75] and "the scope of the transaction cannot be extended by implication." [76] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation of the parties intent in a contract can be made." [77] A contract is not rendered ambiguous simply because the agreement does not expressly impose the obligation in question. [78] However, "[w]hen the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provision of the contract, but also to whatever the law . . . regards as implied in a contract of that kind or necessary for the contract to achieve its purpose." [79]

When a contract term is ambiguous, the court must turn to the rules of construction outlined in the Civil Code to determine the meaning of the contract within the "four corners" of the document. [80] A provision is ambiguous where it is "reasonably subject to more than one meaning." [81] The Civil Code sets forth a number of factors to consider in determining which possible meaning accurately reflects the intent of the parties. Impor-

tantly, "[a] doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." [82] Additionally, "the contract must be construed as a whole and in light of attending events and circumstances." [83]

## C. Analysis

The parties entered a Settlement Agreement on October 25, 2010, wherein SnoWizard released Hanover from all claims asserted in the third-party complaint for Hanover's refusal to defend SnoWizard in the Consolidated Suits, in consideration of:

Hanover's agreement to defend SnoWizard in the Consolidated Suits subject to Hanover's three July 12, 2010, *Reservation of Rights* letters to SnoWizard concerning SnoWizard's tender of defense and indemnification in the Consolidated Suits . . . and subject to Hanover's stipulations and affirmative defenses set forth by Hanover in its response to the Third–Party Complaint. [84]

The Reservation of Rights letters clearly state that Hanover will "defend the suit at its expense" in recognition of the vague allegations of disparagement in the Second Amended Complaint, which could conceiv-

**75.** La. Civ.Code art. 3076.

**76.** *Brown v. Drillers, Inc.*, 630 So.2d 741, 748 (La.1994).

**77.** *Exxon Corp. v. St. Paul Fire & Marine Ins.*, 889 F.Supp. 908, 911 (E.D.La.1995) (Jones, J.) (quoting La. Civ.Code art. 2046).

**78.** *Id.* (citing *American Totalisator Company, Inc. v. Fair Grounds Corp.*, 3 F.3d 810, 814 (5th Cir.1993)).

**79.** La. Civ.Code art. 2054.

**80.** *Brown*, 630 So.2d at 748; *Hettig & Co. v. Union Mut. Life Ins. Co.*, 781 F.2d 1141, 1143 (5th Cir.1986) (citations omitted).

**81.** *Hettig & Co.*, 781 F.2d at 1143.

**82.** La. Civ.Code art. 2053.

**83.** *See Brown*, 630 So.2d at 748; *see also* La. Civ.Code art. 2050 ("Each provision in a contract must be interpreted in light of the other provision so that each is given the meaning suggested by the contract as whole.")

**84.** Rec. Doc. 591–2 at p. 2.

ably have fallen within coverage, although Hanover maintained that the claims were not covered.[85] The Reservation of Rights letters subject the agreement to "defend the suit" to the following reservations:

> Hanover Insurance Company will not pay any judgment, neither will it indemnify SnoWizard, Inc. against any claim or judgment predicated upon any uncovered loss and damage, or any loss and damage which falls within any policy exclusion, including those cited above. Hanover Insurance Company's position on coverage in this matter and its undertaking to defend SnoWizard, Inc. does not waive any other policy defense or legal rights available to Hanover Insurance Company, and Hanover Insurance Company reserves the right to amend or alter its position on coverage at any time should additional information come to light, should circumstances change.[86]

The rights reserved by Hanover all relate to Hanover's position on the issue of coverage, which is a separate and distinct issue from the obligation to furnish a defense.[87]

The Settlement Agreement also reserves unto Hanover the defenses set forth in the answer to the third-party complaint.[88] Hanover notes that it has never withdrawn its answer, and the duty to furnish a defense to SnoWizard is subject to the defenses set forth in the answer. However, the answer does not address Hanover's distinct duty to defend, nor the obligation to defend assumed by the Settlement Agreement. The answer merely asserts that the policy does not cover the claims

against SnoWizard, and by extension Hanover is not obligated to furnish a defense under the policy.[89] The answer does not address the duty to defend as a "separate and distinct inquiry" from the duty to provide coverage.[90] Therefore, the Court finds that the Settlement Agreement is not ambiguous. Indeed, the Settlement Agreement clearly expresses that Hanover will furnish SnoWizard with a defense in recognition of the vague allegations of "disparagement" in the Second Amended Complaint. However, Hanover unambiguously reserves all of its coverage defenses set forth in the policy itself, the answer to the third party complaint, and the Reservation of Rights letters, and it reserves the right to alter its position on coverage if circumstances change.

It is true that the Settlement Agreement and the Reservation of Rights letters do not explicitly address the present situation, where a determination that coverage is excluded is made before trial. However, the Settlement Agreement is not rendered ambiguous simply because the agreement does not expressly impose the obligation in question.[91] Having found that the Settlement Agreement is unambiguous, it must be enforced as written, and Louisiana Civil Code article 2046 instructs that "no further interpretation may be made in search of the parties' intent."

The Court is also persuaded by SnoWizard's argument that termination of SnoWizard's defense at this time would be so prejudicial as to constitute a breach of Hanover's fiduciary duties.[92] Hanover

85. *Id.* at p. 19; *see also id.* at pp. 29, 39.

86. Rec. Doc. 632–1 at pp. 20, 40.

87. *See Martco,* 588 F.3d at 872.

88. Rec. Doc. 46.

89. *See id.* ¶¶ 3, 4, 9.

90. *See Martco,* 588 F.3d at 872.

91. *See American Totalisator Company, Inc. v. Fair Grounds Corp.,* 3 F.3d 810, 814 (5th Cir.1993).

92. *See Pareti,* 536 So.2d at 423–24.

does not refute the Louisiana Supreme Court's observation in *Pareti* that there may come a point in ongoing litigation where the withdrawal of Hanover's defense would constitute a breach of its fiduciary duties of good faith and fair dealing to its insured. Instead, Hanover implies that such a point has not been reached in the present litigation because so few of Plaintiff's claims against SnoWizard are remaining, and SnoWizard would retain able counsel to defend the remaining uncovered claims. The Court fails to see how it would not be highly prejudicial for SnoWizard to lose its principal defense attorneys just days before trial. Moreover, if Hanover's contentions that the remaining claims are so easily handled is true, the costs of continuing to furnish SnoWizard a defense through trial will be minimal, especially in relation to the significant potential prejudice to SnoWizard if the defense is terminated at this time.

### IV. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Hanover's Motion for Summary Judgment[93] is **DENIED** insofar as it seeks to terminate the defense of SnoWizard.

---

93. Rec. Doc. 581.